SHAWN K. AIKEN
2390 East Camelback Road, Suite 400
Phoenix, Arizona  85016
Telephone:  (602) 248-8203
E-Mail:  docket@ashrlaw.com
E-Mail:  ska@ashrlaw.com
Shawn K. Aiken – 009002
Heather A. Macre – 026625
William H. Knight – 030514
Stephanie McCoy Loquvam – 029045

GRIFFEN & STEVENS LAW FIRM, PLLC
609 North Humphreys Street
Flagstaff, Arizona 86001
Phone: (928) 226-0165
E-Mail:  stevens@flagstaff-lawyer.com
Ryan J. Stevens – 026378

MIKKEL (MIK) JORDAHL P.C.
114 North San Francisco, Suite 206
Flagstaff, Arizona 86001
Phone: (928) 214-0942
E-Mail:  mikkeljordahl@yahoo.com
Mikkel Steen Jordahl – 012211

DILLON LAW OFFICE
PO Box 97517
Phoenix, Arizona  85060
Phone: (602) 224-4468
E-MAIL: dillonlaw97517@gmail.com
Mark Dillon— 014393
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Joseph Connolly and Terrel L. Pochert; Suzanne Cummins and Holly N. Mitchell; Clark Rowley and David Chaney; R. Mason Hite IV and Christopher L. Devine; Meagan and Natalie Metz; Renee Kaminski and Robin Reece; Jeffrey Ferst and Peter Bramley,<br><br>Plaintiffs,<br><br>v.<br><br>Chad Roche, In His Official Capacity As Clerk Of The Superior Court Of Pinal County, Arizona; Michael K. Jeanes, In His Official Capacity As Clerk Of The Superior Court Of Maricopa County, Arizona; and Deborah Young, In Her Official Capacity As Clerk Of The Superior Court Of Coconino County, Arizona,<br><br>Defendants. | Case No. **2:14-cv-00024-JWS**<br><br>PLAINTIFFS' NOTICE OF FILING AMENDED COMPLAINT |

1   Plaintiffs give notice that they have this day filed an amended complaint. The

2   attached redline version indicates in what respect the amended complaint differs from the

3   original (Doc. 1). L.R. Civ. 15.1(b).

4   DATED:  February 10, 2014.          By  *s/ Shawn K. Aiken – 009002*
                                             Shawn K. Aiken
5                                            Heather A. Macre
                                             William H. Knight
6                                            Stephanie McCoy Loquvam
                                             2390 East Camelback Road
7                                            Suite 400
                                             Phoenix, Arizona 85016
8

9                                      By  *s/ Ryan J. Stevens – 026378*
                                             Ryan J. Stevens
10                                           GRIFFEN & STEVENS LAW FIRM, PLLC
                                             609 North Humphreys Street
11                                           Flagstaff, Arizona 86001

12

13                                     By  *s/ Mikkel Steen Jordahl -- 012211*
                                             Mikkel Steen Jordahl
14                                           MIKKEL (MIK) JORDAHL PC
                                             114 North San Francisco, Suite 206
15                                           Flagstaff, Arizona 86001

16

17                                     By  *s/ Mark Dillon -- 014393*
                                             Mark Dillon
18                                           DILLON LAW OFFICE
                                             PO Box 97517
19                                           Phoenix, Arizona  85060

                                             Attorneys for Plaintiffs
20

21   I hereby certify that on this 10th day of February, 2014 I electronically transmitted the
     attached document to the Clerk's Office using the CM/ECF System for filing and a copy
22   was electronically transmitted to the following:

23   Kathleen P. Sweeney
     Todd M. Allison
24   Assistant Attorneys General
     1275 West Washington
25   Phoenix, Arizona 85007-2997
     kathleen.sweeney@azag.gov
26   todd.allison@azag.gov
     Attorneys for Defendant Michael K. Jeanes, In His Official Capacity As Clerk Of The
27   Superior Court Of Maricopa County, Arizona

28   *s/ DeAnn M. Buchmeier*
     S:\Connolly - Pochert\21401001\Pleadings\NOFAmCmplt 140210.docx

Sʜᴀᴡɴ K. Aɪᴋᴇɴ
2390 East Camelback Road,
Suite 400
Phoenix, Arizona  85016
Telephone:  (602) 248-8203
E-Mail:  docket@ashrlaw.com
E-Mail: ~~E-Mail:~~ ska@ashrlaw.com
Shawn K. Aiken – 009002
Heather A. Macre – 026625
William H. Knight – 030514
Stephanie McCoy Loquvam – 029045

Gʀɪꜰꜰᴇɴ & Sᴛᴇᴠᴇɴs Lᴀᴡ Fɪʀᴍ, PLLC
609
~~Eʟʟᴇɴ K. Aɪᴋᴇɴ~~
~~Sᴀᴄᴋs Tɪᴇʀɴᴇʏ, P.A.~~
~~4250~~ North Humphreys
Street ~~Drinkwater Blvd. 4th Floor~~
Flagstaff~~Scottsdale~~, Arizona
86001~~85251-3693~~
Phone: (928) 226-0165
E-Mail:  stevens@flagstaff-lawyer.com
Ryan J. Stevens – 026378

Mɪᴋᴋᴇʟ (Mɪᴋ) Jᴏʀᴅᴀʜʟ P.C.
114 North San Francisco, Suite 206
Flagstaff, Arizona 86001
Phone: (928) 214-0942
E-Mail:  mikkeljordahl@yahoo.com
Mikkel Steen Jordahl – 012211

Dɪʟʟᴏɴ Lᴀᴡ Oꜰꜰɪᴄᴇ
PO Box 97517
Phoenix, Arizona  85060
Phone: (602) 224-4468
E-MAIL: dillonlaw97517@gmail.com
Mark Dillon— 014393
~~E-Mail: Ellen.Aiken@SacksTierney.com~~
~~Ellen Aiken – 028795~~

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

Joseph Connolly and~~;~~ Terrel L. Pochert;
Suzanne Cummins and~~;~~ Holly N. Mitchell; Clark
Rowley and~~;~~ David Chaney; R. Mason Hite IV
and~~; And,~~ Christopher L. Devine; Meagan and
Natalie Metz; Renee Kaminski and Robin Reece;
Jeffrey Ferst and Peter Bramley~~Each For~~
~~Themselves And All Others Similarly Situated~~,

_____ Plaintiffs,

v.

Case No. 2:14-cv-00024-JWS

AMENDED COMPLAINT FOR
PERMANENT INJUNCTION
AND DECLARATORY
JUDGMENT

Chad Roche~~V.~~

~~Janice K. Brewer, In Her Official Capacity As Governor Of Arizona; Thomas C. Horne~~, In His Official Capacity As Clerk Of The Superior Court~~Attorney General~~ Of Pinal County, Arizona; Michael K. Jeanes, In His Official Capacity As Clerk Of The Superior Court Of Maricopa County, Arizona; and Deborah Young, In Her Official Capacity As Clerk Of The Superior Court Of Coconino County, Arizona~~And, Does 1-25~~,

_____ Defendants.

## I.   NATURE OF THE CASE AND BACKGROUND TO CLAIMS FOR RELIEF

1.   Over ten years ago, the Supreme Court of the United States recognized that the federal constitution protects the choice to have an intimate relationship with a same-sex partner "without intervention of the government." *Lawrence v. Texas*, 539 U.S. 558, 578 (2003).

2.   In June 2013~~Six months ago~~, the Supreme Court struck Section 3 of the Defense of Marriage Act (DOMA), which barred any federal marital benefits to same-sex couples who were legally married in states that permitted such marriages. *See United States v. Windsor*, 133 S.Ct. 2675 (2013).

3.   Today, Plaintiffs ask this Court to follow the reasoning in *Windsor* and **strike Arizona's ban on same**-sex marriage found in Article 30, Section 1 of the Arizona Constitution (and other laws of the State of Arizona).

4.   ~~It is widely expected that the Supreme Court will eventually resolve this issue. Until that decision,~~ Plaintiffs seek this Court's declaration that the U. S. Constitution bars Arizona from the same discriminatory conduct that the *Windsor* court declared unconstitutional.

### A.   **Arizona's Marital Laws Prohibit Same**-Sex Marriage.

5.   In 1996, immediately following Congressional passage of DOMA, Arizona**'s** forty-second legislature banned same-sex marriage. *See* Arizona Revised Statutes

("A.R.S.") § 25-101(C) ("~~)("~~Marriage between persons of the same sex is void and prohibited."). Th~~at~~ same Arizona legislature also prohibited recognition of same-sex marriages that were otherwise valid under **another state's** law. *See* A.R.S. § 25-112(A**) ("~~)("~~**Marriages valid by the laws of the place where contracted are valid in this state, except marriages that are void and prohibited by section 25-**101**.").

6.      Three years later, in 1999, the Arizona legislature approved amendments to several statutes related to marriage, including a statutory definition of marriage as between a male and a female person. *See* A.R.S. § 25-125(A**) ("~~)("~~A valid marriage is contracted by a male person and a female person with a proper marriage license[.]"). The legislature also provided that persons "shall not** be joined in marriage in [Arizona] until a license has been obtained for that purpose from the clerk of the superior court in any county of this state." A.R.S. §** 25-121(A).

7.      **In 2003, the Arizona Court of Appeals upheld Arizona's definition of** marriage. *See Standhardt v. Superior Court*, 77 P.3d 451 (App. 2003)*, review denied* (May 25, 2004) ~~(2003)(~~accepting special action jurisdiction over a challenge to the clerk of the court's refusal to issue a marriage license to a same sex couple).

~~8.      ~~In 2006, Arizona voters rejected an amendment to the state constitution banning same-sex marriage.

~~9.~~8.      In 2008, the Arizona legislature referred and the voters of Arizona passed Proposition 102, also known as the *Marriage Protection Amendment*, which amended ~~an amendment to~~ the Arizona Constitution to define marriage as between one man and one woman. ~~barring State recognition of same-sex marriages.~~ *See* Ariz. Const. art. 30, § 1 ("Only a union of one man and one woman shall be valid or recognized as a marriage in this state.").

~~10.~~9.      The Arizona Constitution now prevents gay men and women from entering into ~~a~~ marriage with their ~~a committed~~ same-sex ~~life~~ partner.

~~11.~~10.      The Arizona Constitution further prohibits the State from honoring a valid,

same-sex marriage permitted~~sanctioned~~ by another jurisdiction.

~~12.~~11.  As a result, same-sex couples who desire to marry cannot do so in Arizona. Moreover, Arizona denies recognition of the marriages of those gay men and women who have entered into valid marriages elsewhere in the United States.

12.    And, unlike many states, including, for example, Nevada, the Arizona legislature has never authorized so-**called "domestic partnerships," although a few Arizona cities have afforded some limited benefits to same-sex local residents. Same-sex couples therefore have no statewide guarantee of the rights—let alone the status and dignity—associated with marriage in the State of Arizona.**

**B.**    Arizona**'s Ban on Same**-Sex Marriage Violates the Equal Protection and Due Process Clauses of the Fourteenth Amendment.

13.    In 1996~~Seventeen years ago~~, the Supreme Court confirmed that the U.S. Constitution prohibits discrimination on the basis of sexual orientation. *~~See~~ Romer v. Evans*, 517 U.S. 620, 635–36 (1996).

14.    Nevertheless, today, twenty-eight states have constitutional prohibitions against same-sex marriage and another four states—West Virginia, Wyoming, Pennsylvania, and Indiana—prohibit same-sex marriage under state law.

~~15.    However~~However**Setting aside the Ninth Circuit's now** ~~vacated decision in *Perry v. Brown*, the only federal circuit court that squarely faced this issue upheld the "traditional" definition of marriage. *See Citizens for Equal Protection v. Bruning*, 455 F.3d 859 (8th Cir. 2006)(holding that Nebraska state constitutional amendment defining marriage as~~ **"between a man and a woman" did not violate Equal Protection Clause;** ~~and reversing contrary district court opinion under 42 U.S.C. § 1983).~~

~~16.    Before *Windsor*, the federal district courts in the Ninth Circuit that had most recently considered the constitutionality of such laws also upheld the definition of marriage as the union between one man and one woman. *See Jackson v. Abercrombie*, 884 F.Supp. 2d 1065 (D. Haw. 2012); *Sevcik v. Sandoval*, 911 F.Supp. 2d 996 (D. Nev. 2012).~~

17.15. But, deep change has taken place elsewhere in the country. In 2004, Massachusetts Today, same-sex marriage is allowed gay marriage. Many in states followed suit. In late 2013 where over forty percent of Americans live. Late last year, Hawaii became the sixteenth state to recognize same-sex marriage.

18.16. In December 2013, the U.S. District Court for the District of Utah and the unanimous New Mexico Supreme Court made Utah and New Mexico the seventeenth and eighteenth states to join the list of states that recognize same-sex marriage. Today, same-sex marriage is allowed in states where over forty percent of Americans live.

19.17. And, in June 2013 six months ago, the U.S. Supreme Court's opinion in *Windsor* confirmed a profound doctrinal change in the law whose origins stretch back forty-six years to the historic decision in *Loving v. Virginia*, 388 U.S. 1, 12 (1967) ) ((recognizing marriage as "one of the 'basic civil rights of man[ ]'" (citation omitted)).

20.18. In *Windsor*, the Supreme Court held that the definition of marriage in Section 3 of the federal Defense of Marriage Act ("DOMA") as "a legal union between **one man and one woman" was unconstitutional as a deprivation of equal protection under** the Fifth Amendment to the U.S. Constitution. More precisely, *Windsor* held that the definition of marriage as a legal union between a man and a woman was unconstitutional because it denied same-**sex married couples "the benefits and responsibilities that come with the federal recognition of their marriages."** 133 S.Ct. at 2693.

21.19. Three Two federal district courts, including one in the Ninth Circuit, have since followed that rationale by applying the Equal Protection Clause of the Fourteenth Amendment to the states and striking state laws that either banned same-sex marriage or recognition of such marriages. *See Kitchen v. Herbert*, 2013 WL 6697874 (D. Utah ) (Dec. 20, 2013); *Obergefell v. Wymyslo*, 2013 WL 6726688 (S.D. Ohio ) (Dec. 23, 2013); *Bishop v. United States ex rel. Holder*, 2014 WL 116013 (N.D. Okla. Jan. 14, 2014).

20. In an opinion issued less than one month ago, the Ninth Circuit held that peremptory juror strikes based on a person's sexual orientation are unconstitutional under

the Equal Protection Clause (using a "heightened scrutiny" standard to evaluate such classifications). *SmithKline Beecham v. Abbott Labs*, 2014 WL 211807 (9th Cir. Jan. 21, 2014).

~~22.~~ 21. The "freedom to marry has long been recognized as one of the vital personal rights essential to the orderly pursuit of happiness by free men." *Loving v. Virginia*, 388 U.S. 1, 12 (1967).

~~23.~~ This Court should reach the conclusion that flows from the decisions in *Loving v. Virginia*, *Romer v. Evans*, *Lawrence v. Texas* and *United States v. Windsor*, namely that laws prohibiting same-sex marriage violate the Constitutional requirements of equal protection and due process. ~~.~~

22.   Plaintiffs respectfully ask that this Court enforce their rights~~fundamental right~~ to equal protection and due process under the United States Constitution, and declare as unconstitutional Article 30, Section 1 of the Arizona Constitution and all similar marital statutes, including A.R.S. § 25-101(C), -112(A), and -125(A) ("Marriage Discrimination Statutes").

~~24.~~ 23. Plaintiffs request that the Court ")~~, and~~ permanently enjoin the enforcement of the Marriage Discrimination Statutes~~any~~ and all other provisions of Arizona law that may deny Plaintiffs equal access to the benefits of marriage in the State of Arizona, including the right of same-sex couples to marry in or have their out-of-state marriages recognized by the State of Arizona.

## II.   JURISDICTION, PARTIES AND VENUE

### A.   Federal Question Jurisdiction

~~25.~~ 24. Because Plaintiffs allege violations of rights arising under the Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. § 1983, this Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3).

~~26.~~ 25. Given the far-reaching doctrinal developments~~change~~ in the law confirmed

by the decision~~decisions~~ in *Windsor*, ~~and *Hollingsworth v. Perry*, 133 S.Ct. 2652 (2013),~~ Plaintiffs raise substantial federal questions despite the contrary reasoning applied~~conclusion reached~~ over forty years ago in *Baker v. Nelson*, 409 U.S. 810 (1972) **(summarily dismissing "for want of substantial federal question"** an appeal from a Minnesota Supreme Court decision upholding a statute that restricted marriage to opposite-sex couples). *Cf. Hicks v. Miranda*, 422 U.S. 332, 344–45 (1975) ("unless and until the Supreme Court should instruct otherwise, inferior federal courts had best adhere to the view that if the Court has branded a question as unsubstantial, it remains so except when doctrinal developments indicate otherwise"). **Over the past forty years, the many** intervening decisions from the Supreme Court in this area of the law, including *Romer*, *Lawrence*, and *Windsor*, confirm that what was once "unsubstantial" in 1972 now make the question presented here "substantial."

   B.      The Plaintiffs

   26.     Today, over 650,000 same-sex couples live in the United States. The U.S. Census Bureau estimates that the percentage of cohabiting same-sex couples living in Arizona equals the percentage living in, for example, the state of New York, the fourth most populous state in the nation. In 2010, the U.S. Census Bureau estimated that roughly 21,000 same-sex couples live in Arizona.

   ~~B.~~27.   Plaintiffs live across Arizona, including the three most populous counties—Maricopa, Pima, and Pinal—where 81 percent of all Arizonans reside. ~~the Plaintiff Class~~

*Joe and Terry*

   ~~27.~~28. Plaintiffs Joseph Connolly ("Joe") and Terrel Pochert ("Terry") reside in~~are residents of~~ Pinal County, Arizona.

   ~~28.~~29. Joe and Terry met in Michigan **in 1995** and**, after Terry's retirement,** moved to Arizona in 1997 where they continue to live together ~~as life partners~~in a committed relationship.

   ~~29.~~30. For several years, Joe and Terry have lived together in Pinal County,

Arizona. They own a home, have a joint bank account, and otherwise live as many~~any~~ other married couples do~~couple would~~. They have been long-time, active members of a Lutheran church congregation in Maricopa County, Arizona. And, like many~~any~~ other Arizona couples~~couple~~ and families~~family~~, they hoped to marry in their state of residence and enjoy the benefits that flow from recognition of their marriage.

~~30.~~31.   ~~For years, Joe and Terry wished to confirm their love for and life-long commitment to one another.~~ Unfortunately, they lived in Arizona where the law prohibited their marriage.

~~31.~~32.   On May 15, 2008, the California Supreme Court struck down the California statutes limiting marriage to opposite-sex couples. *See In re Marriage Cases*, 183~~189~~ P.3d 384, 427 (Cal. 2008) ("[)~~)("[~~T]he California Constitution properly must be interpreted to guarantee this basic civil right to [marry to] all individuals and couples, without regard to **their sexual orientation.**").

~~32.~~33.   As a result, in mid-June 2008, county officials across California began issuing marriage licenses to same-sex couples.

~~33.~~34.   On July 4, 2008, following this change in California law, Joe and Terry married in that state. A retired pastor of the Lutheran Church in America performed their wedding ceremony under the laws and procedures of the State of California. Later, the County of Riverside, California recorded and issued them a *License and Certificate of Marriage*.

~~34.~~35.   A few months later, though, the voters of California approved Proposition **8, which added the following language to the California Constitution: "Only marriage between a man and a woman is valid or recognized in California."**

~~35.~~36.   The passage of Proposition 8 ended the issuance of marriage licenses to same-sex couples in California, but not before over 15,000 same-sex marriage licenses had been issued, including one to Joe and Terry. ~~(and Mason and Chris).~~

~~36.~~37.   Although the California Supreme Court later upheld Proposition 8, *Strauss*

*v. Horton*, 207 P.3d 48 (Cal. 2009), the court also held that Proposition 8 had no effect on the already-issued licenses, which remained valid under California law.

37 38. Because Joe and Terry were married in California before the passage of Proposition 8, they are in a valid California marriage. *See Strauss v. Horton*, 207 P.3d 48, 119 (Cal. 2009) ()(holding that Proposition 8 did not "invalidate retroactively the marriages of same-**sex couples performed prior to its effective date**").

38 39. Nevertheless, the laws of Arizona prohibit~~prohibited~~ the State from recognizing **Joe and Terry's** legal California marriage. Their marriage remains invalid in their home state to this day. ~~*See* A.R.S. § 25 112(A)("Marriages valid by the laws of the place where contracted are valid in this state, except marriages that are void and prohibited by section 25 101.").~~

40.     On January 31, 2014, Joe and Terry went~~Arizona's refusal~~ to ~~recognize~~ the Office~~validity~~ of the Clerk of the Superior Court of Pinal County ("Pinal **County Clerk"),** 971 Jason Lopez Circle, Florence, Arizona, to apply for an Arizona~~Joe and Terry's California~~ marriage license.

41.     The assistant clerk indicated that she was unsure about giving Joe and Terry an application. She placed a call to her superiors.

42.     When she finished her call, the clerk informed Joe and Terry that she could not take their application.

43.     The clerk then told Joe and Terry that she personally wished she could issue~~harms~~ them a marriage license, but they would have to contact Odette Apodaca, the Case Management Director for the Pinal County Clerk, to inquire about why she could not.

44.     Joe and Terry e-mailed Odette Apodaca to further inquire why they were not even permitted to fill out an application.

45.     Odette Apodaca replied by referring Joe and Terry to A.R.S. § 25-101.

39 46. Under the Marriage Discrimination Statutes, Arizona denies to Joe and

Terry ~~denying them~~ the rights, protections, ~~and~~ benefits, and obligations associated with marriage ~~, such as Terry's spousal pension benefits, other spousal survivorship rights, the right to loss of consortium damages in civil lawsuits, the privilege not to testify against one another, and so on~~.

*Suzanne and Holly*

~~40.~~ 47. Plaintiffs Suzanne Cummins and Holly Mitchell reside in Maricopa County, Arizona.

~~41.~~ 48. Holly and Suzanne have been in a committed relationship since 2007. For years, they have lived together in the same household, sharing their finances, responsibilities, and otherwise living together as many other ~~any~~ married couples do ~~couple would~~.

~~42.~~ 49. Holly and Suzanne actively volunteer their time ~~and resources~~ to various community childcare endeavors. Suzanne, for example, is a troop leader in the Purple Sage Council, a local chapter of the Girl Scouts of America, and both Holly and Suzanne serve as foster care mentors.

~~43.~~ 50. Like many ~~any~~ other Arizona couples ~~couple~~ and families ~~family~~, they hoped to marry in their state of residence and enjoy the benefits that flow from recognition of their marriage.

~~44.~~ 51. ~~For years, Holly and Suzanne wished to confirm their love for and life-long commitment to one another.~~ Unfortunately, they live in Arizona where the law prohibits their marriage.

~~45.~~ 52. Because the law of Arizona prohibits them from becoming married and affirmatively denies the validity of any marriage into which they might legally enter in another state, Holly and Suzanne cannot ~~have no way to~~ validate their union as a legal marriage in their home state.

~~46.~~ 53. Despite having been denied the dignity and benefits that the State of Arizona affords others solely because they are a same-sex couple, Holly and Suzanne

continue to live as a married couple ~~and treat all household finances and other responsibilities accordingly~~.

~~47~~54.  In 2008, Holly and Suzanne began planning for the future of their family. They~~Holly and Suzanne~~ decided to foster and ultimately adopt children into their ~~loving~~ family.

~~48~~55.  In September ~~of~~ 2009, Holly and Suzanne ~~both~~ began attending the Partnering for Safety and Permanence-Model Approach to Partnership in Parenting ("PS-MAPP") classes required to become licensed foster parents in Arizona.

~~49~~56.  Holly and Suzanne became certified foster ~~care~~ parents in late 2009.

~~50~~57.  Holly and Suzanne wished to grow their family by becoming permanent adoptive parents.

~~51.    Although Holly and Suzanne were able to become certified foster care parents, Arizona law strongly prefers heterosexual couples in permanent adoption proceedings and permits only a husband and wife to jointly adopt. See A.R.S. § 8-103(A)("A husband and wife may jointly adopt children.").~~

~~52.    Given these obstacles, Holly and Suzanne, committed to raising a family together, made the difficult decision to adopt in Suzanne's name only.~~

~~53.    If they could have legally married, both Holly and Suzanne would not have faced these hurdles and both would have been listed on the State's certification for adoption.~~

~~54~~58.  In November 2009, they ~~Holly and Suzanne~~ received their first foster care children~~placements~~.

~~55~~59.  Both children were quickly approved for adoption. Holly and Suzanne adopted the younger child~~youngest~~ in November 2010 and the older child~~oldest~~ in July 2011.

~~56~~60.  Suzanne is the legal adoptive parent of both children.

57 61. Holly and Suzanne continue to serve as foster parents; they, and are currently the foster parents of an 18-month-old child in addition to their two adopted children.

58. UnderGiven the Marriage Discrimination Statutes,statutory and policy obstacles same sex couples face in Arizona denies to, Holly and currently has no legal parental rights over either of her adopted children.

59. One of their children has a rare and chronic medical condition that has required and will continue to require years of ongoing medical treatment.

60. But only Suzanne, as the sole legal parent, may authorize the required treatments and medical procedures.

61. Should a family emergency make Suzanne unavailable, Holly cannot guide medical decisions or authorize life-saving medical treatment if her children so require.

62. Because Arizona law has prevented Holly from becoming the second legal parent of her children, only Suzanne can remove the children from school to take them to doctors' appointments.

63. The time Suzanne has had to take from work to care for their sick child has cost their family significant social and economic opportunities, including vacation time and income.

64. Holly and Suzanne wished to marry one another in their home state, but have not and cannot legally marry in Arizona. Moreover, the laws of Arizona have prevented Holly from becoming the legal parent of their children.

65.62. Arizona's refusal to permit Holly and Suzanne to marry harms them by denying them the rights, protections, and benefits, and obligations associated with marriage, such as spousal pension benefits, other spousal survivorship rights, the right to loss of consortium damages in civil lawsuits, the privilege not to testify against one another, the ability to make emergency medical decisions for each other and for their

children, and so on.

*Clark and David*

66.63. Plaintiffs Clark Rowley and David Chaney are longtime residents of Maricopa County, Arizona.

67.64. Clark and David met in Arizona and have been in a committed relationship for over five years.

68.65. They live together as life partners as many~~any~~ other married couples do~~couple would~~, and share ~~all~~ household duties and responsibilities.

69.66. For years, they have wanted to confirm their love and lifelong commitment to each other, but they live in Arizona where same-sex marriage is prohibited and where out-of-state, legal same-sex marriages are not recognized as valid.

70.67. In 2010, Clark and David decided that they wanted to marry; they ~~and~~ discussed becoming~~being~~ legally married in a state that allowed same-sex marriage.

71.68. Realizing that their out-of-state marriage would not be honored in Arizona and that they truly wished to marry in their home state, Clark and David instead~~ultimately~~ decided to have a commitment ceremony ~~instead~~ because Arizona offered them no alternative to validate their union ~~as a legal marriage~~.

72.69. On~~So, on~~ October 9, 2010, Clark and David held a commitment ceremony before the fountains at the Scottsdale Civic Center in testimony to their love and commitment to one another in front of over 300 of their closest friends and family.

73.70. Thereafter, Clark and David opened a joint bank account; ~~and~~ they have shared their finances ever since.

74.71. Clark and David wish to be legally married in their home state of Arizona, but they have not and cannot be legally married in Arizona.

75. Under the Marriage Discrimination Statutes, Arizona denies to Clark and ~~David's inability to legally marry in Arizona is complicated by the fact that~~ David ~~is a~~

~~Type One Diabetic and has suffered from this illness since he was fifteen years old.~~

~~76.   Because he and Clark cannot be married in Arizona, Clark has no role in~~ the ~~decision~~ **making when dealing with David's disease or should David become incapacitated.**

~~77.   In other words, solely because of~~ **Arizona's denial of marriage rights to Clark and David, Clark will have no legal authority to act if something were to happen to David, his life-partner, including making end-of-life or other medical care decisions.**

~~78.~~ 72. **Arizona's refusal to allow Clark and David to marry harms them by denying them many other** rights, protections, ~~and~~ benefits, and obligations associated with marriage~~, such as spousal pension benefits, other spousal survivorship rights, the right to loss of consortium damages in civil lawsuits, the privilege not to testify against one another, and so on~~.

*Mason and Chris*

~~79.~~ 73. Plaintiffs Mason Hite and Christopher Devine reside in Maricopa County, Arizona.

~~80.~~ 74. Mason and Chris met in Phoenix in 2001 and have lived together in a committed relationship since 2002. ~~Since then, they have attempted to live as would any other married couple.~~ They own a home together, ~~for instance, and~~ have a joint bank account, and otherwise live as many other married couples do.

~~81.~~ 75. For years, Mason and Chris sought the responsibilities, privileges and benefits of marriage. The laws of Arizona, however, prevented their marriage to one another. So, like Joe and Terry, Mason and Chris married in California in 2008. Still today, however, their marriage remains invalid under Arizona law. *See* A.R.S. §25-112(A).

~~82.~~ 76. In 2011, Mason and Chris became foster parents licensed by the State of Arizona. They have cared for several foster children since then and are still licensed foster parents.

77.   On February 5, 2014, Mason and Chris went to the Office of the Clerk of

the Superior Court of Maricopa County ("Maricopa County Clerk"), 601 W. Jefferson Street, Phoenix, Arizona, to apply for an Arizona marriage license.

78.     In the office of the Maricopa County Clerk, they truthfully completed an application provided by an assistant clerk.

79.     When Mason and Chris were called to the counter, they both presented state-issued driver's licenses as requested by Ramona, the clerk on duty.

80.     Ramona reviewed Mason and Chris' application and their driver's licenses, handed the application back and told them that she could not accept it or issue them a marriage license.

81.     Ramona told Mason and Chris that it would not be legal for her to issue them a marriage license in Arizona, so they left.

82.     Under the Marriage Discrimination Statutes, Arizona denies to Mason and Chris the rights, protections, benefits, and obligations associated with marriage.

*Meagan and Natalie*

83.     Meagan (nee Pugh) Metz and Natalie Metz live in Flagstaff (Coconino County), Arizona.

84.     They are a same-sex couple who have lived in a committed, monogamous relationship for the past seven years.

85.     Meagan and Natalie were lawfully married in the State of Washington on May 29, 2013. They now seek to have their marriage recognized by the State of Arizona or obtain a marriage license in Coconino County, Arizona.

86.     After their marriage in the State of Washington, where Meagan grew up, the couple returned to Arizona and hosted a wedding reception in Flagstaff. Their families, friends, and colleagues attended the Flagstaff wedding reception in order to celebrate their marriage. Meagan and Natalie refer to each other as "wife" and openly present their union as a marriage.

87.     Meagan and Natalie love one another, own a home jointly in Flagstaff, share

a joint bank account, own a vehicle jointly, and raise two dogs (Lucy and Eldon) together. After their marriage in the State of Washington, Meagan changed her surname from Pugh to Metz, in furtherance of their union.

88.     Meagan and Natalie wish to enjoy the same privileges, status, dignity and contractual rights that are conferred by the State of Arizona on individuals in opposite-sex marriages.

89.     Meagan works part-time in the healthcare industry while she pursues further education at Northern Arizona University. Natalie is a well-respected registered nurse, who works in the chemotherapy group of Arizona Oncology. Her patients regularly praise her dedicated care. **Recently, one cancer patient's daughter described Natalie as "an incredible nurse, and beautiful soul."**

90.     Meagan and Natalie desire to have a child in 2014. They intend to engage in the process of artificial insemination of Natalie, who will be the biological mother of the child. Meagan and Natalie want the assurance of knowing that their marriage will be respected by state officials and third parties, and that they will be treated under the law in the same way as opposition sex couples would be treated.

91.     On February 6, 2014, Meagan and Natalie went to the office of the Clerk of the Coconino County Superior Court and applied for a marriage license. Meagan and Natalie were received by Deborah Young, the duly elected Clerk of the Coconino County Superior Court, who informed Meagan and Natalie that their marriage license application was denied because Arizona law prohibits the marriage of a same-sex couple.

92.     Under the Marriage Discrimination Statutes, Arizona denies to Meagan and Natalie the rights, protections, benefits, and obligations associated with marriage.

*Jeff and Peter*

93.     Plaintiffs Jeffrey Ferst and Peter Bramley live in Pima County, Arizona.

94.     Peter, a native Tucsonan, and Jeff (born in New York) moved to Scottsdale from Canada in early 2012. They decided to marry last year.

95.     Although they could not marry in their home state of Arizona, they formalized their commitment to one another and were married in Riverside County, California on October 11, 2013.

96.     They live together in Tucson where they share a home, bank account, and otherwise live as many married couples do.

97.     Peter owns a public relations company. He has been in business for over 25 years. Jeff is a well-known artist.

98.     **Arizona's refusal to recognize the validity of Jeff and Peter's California marriage, or permit them to marry in Arizona, harms them by denying them the rights, protections, benefits, and obligations associated with marriage.**

*Renee and Robin*

99.     Plaintiffs Renee Kaminski and Robin Reece are long-term residents of Coconino County, Arizona.

100.    Renee and Robin, a same-sex couple, have been in a committed, monogamous relationship for nearly seven years. They hope to be legally married in the State of Arizona.  They wish to enjoy the same privileges, responsibilities and rights that are conferred by the State of Arizona on those in opposite-sex marriages.

101.    Renee and Robin live together in Flagstaff as committed life partners, sharing a household; co-parenting; running a business together; and, sharing in other responsibilities as any married couple would.

102.    Renee and Robin operate a wedding photography business. Renee is also a registered nurse.

103.    **Using a friend as a donor, and with Renee's assistance, Robin became** pregnant, resulting in the birth of their now three-year-old son.

104.    Robin and Renee raise their son as equal and full co-parents.

105.    On January 24, 2014, Renee and Robin went to the office of the Clerk of the Coconino County Superior Court and applied for a marriage license.

106.   Renee and Robin were received by Deborah Young, the duly elected Clerk of the Coconino County Superior Court, who informed Renee and Robin that their marriage license application was denied because Arizona law prohibits a marriage between same-sex couples.

107.   Because they cannot legally marry in Arizona, Renee and Robin would incur significant expenses arranging for, and traveling to, another state to marry.

108.   Arizona's refusal to permit Renee and Robin to marry harms them by denying them the rights, protections, benefits, and obligations associated with marriage.

83.   In 2012, Mason and Chris sought to permanently adopt a seven year old boy in their foster care. Arizona law strongly prefers heterosexual couples in permanent adoption proceedings and permits only a husband and wife to jointly adopt. *See* A.R.S. § 8-103(A)("A husband and wife may jointly adopt children.").

84.   Because of these barriers, Mason and Chris were forced to choose which of them would be their son's adoptive father. They eventually decided that Mason would adopt him, so Mason's name appears on their son's birth certificate. But, their son calls both Mason and Chris "Daddy."

85.   The State's refusal to recognize the validity of Chris and Mason's California marriage prevents them from attaining equal legal status as fathers to their son. This creates one of several unfair and unnecessary burdens for the family in every aspect of life: from the mundane (permission slips and bank accounts) to the profound (decision-making in end-of-life situations).

*The Proposed Plaintiff Class*

86.   For these reasons, and after years of suffering the unfair denial of the benefits of marriage in Arizona, Plaintiffs bring this action for themselves and all others similarly situated.

87.   The Plaintiff Class consists of the following two sub-classes: (a) all those who, like Clark and David, and Suzanne and Holly, reside in the State of Arizona and

otherwise meet the legal requirements to marry in Arizona, but wish to marry someone of the same sex, and who are for that reason alone denied the right to marry by Arizona law; and, (b) all those who, like Joe and Terry, and Chris and Mason, reside in the State of Arizona and have legally married one another under the laws and procedures of another state, but to someone of the same sex, and whose marriage for that reason alone is not recognized as valid under Arizona law.

C.   The Defendants

~~88.~~ 109.   This Court has personal jurisdiction over the defendants because they are domiciled in the State of Arizona.

~~89.   Defendant Janice K. Brewer, the governor and chief executive officer of the State of Arizona, conducts official business from her office located in this District (in Phoenix, Arizona). Gov. Brewer must, among other duties, "supervise the official conduct of all executive and ministerial officers." A.R.S. § 41-101(A).~~

~~90.   Defendant Thomas C. Horne, the chief legal officer of the State of Arizona, conducts official business from his office located in this District (in Phoenix, Arizona).~~

~~91.   Under Arizona law, the governor may serve no more than two consecutive terms in office. Most authorities believe that the law does not allow Gov. Brewer to seek a third term, so, under current law, she must leave office at the end of her term (2014). She likely would vacate the office of Governor, therefore, during the pendency of this lawsuit.~~

~~92.   Attorney General Horne faces uncertain re-election to his office in November 2014.~~

~~93.   In such cases—where the defendant public officer leaves office during the suit—the officer's successor is automatically substituted as a party (e.g., Fed.R.App.Proc. 43(c)(1)). See Kentucky v. Graham, 473 U.S. 159 (1985). Plaintiffs give notice of the same here.~~

~~94.~~ 110.   ~~Defendant~~ Michael K. Jeanes, the Clerk of the Court of Maricopa County, Arizona, conducts official business from his office located in this District (in

Phoenix, Arizona). In every county of Arizona, the superior court clerk serves as an officer of the judicial branch of state government. Ariz. Const. art. 6, § 23. The duties of the superior court clerk, described generally in A.R.S. § 12-283, include operation of a marriage license office, where Defendant Jeanes receives applications for and issues marriage licenses. ~~(or, as described on the Clerk's website, so called "Traditional Marriage Licenses").~~

111.   Defendant Deborah Young, the Clerk of the Court of Coconino County, Arizona, conducts official business from her office located in Flagstaff, Arizona.  Like Defendant Jeanes, her duties include operation of a marriage license office, where Defendant Young receives applications for, and issues, marriage licenses.

112.   Defendant Chad Roche, the Clerk of the Court of Pinal County, Arizona, conducts official business from his office located in Florence, Arizona.  Like Defendants Jeanes and Young, his duties include operation of a marriage license office, where Defendant Roche receives applications for, and issues, marriage licenses.

~~95.~~113. Defendants, and those under their supervision~~, including Does 1-25~~, interpret and enforce state laws related to marriage in Arizona, especially those constitutional and statutory provisions that deny same-sex couples the right to marry~~marriage~~ in the State of Arizona.

~~96.~~114.   Plaintiffs ~~and the Plaintiff Class~~ seek relief against each Defendant **and each Defendant's of**ficers, employees, and agents, and against all persons acting in cooperation with Defendants, or under their supervision, at their direction, or under their control.

115.   The Defendants are entitled to neither judicial nor quasi-judicial immunity on Plaintiffs' claim for injunctive relief. *See Guiden v. Morrow*, 92 F.Appx. 663, 665 (10th Cir. 2004) (court clerk enjoyed quasi-judicial immunity from suits for money damages but "would not be entitled to immunity in a suit seeking injunctive relief").

D.   Venue

97.116. Venue lies in this Court under 28 U.S.C. § 1391(b) because every Defendant resides in this District and events giving rise to the claims for relief occurred in the District.

98.    The case is founded on causes of action arising in the Phoenix Division of the District. L. R. Civ. 77.1.

E.    Facts Common to All Claims for Relief

99.    In 1996, Congress passed and President Clinton signed into law the so-called Defense of Marriage Act ("DOMA"), 110 Stat. 2419. In Section 3, DOMA provided in part that "the word 'marriage' means only a legal union between one man and one woman as husband and wife, and the word 'spouse' refers only to a person of the opposite sex who is a husband or wife." 1 U.S.C. § 7. Section 2 provided that no state shall be required to give effect to same-sex marriages recognized in other states. 28 U.S.C. § 1738C.

100.    Along with many other states, Arizona followed suit and, in 1996 and 1999, passed similar laws.

101.    Meanwhile, the *Lawrence* case was taking shape in Texas. In 1998, Harris County, Texas sheriff's officers arrested two gay men in their bedroom for violation of the state's anti-sodomy law. The case reached the U.S. Supreme Court, which struck down the Texas laws that criminalized adult, consensual, homosexual sex because the Fourteenth Amendment's Due Process Clause "gives substantial protection to adult persons in deciding how to conduct their private lives in matters pertaining to sex." *Lawrence v. Texas*, 539 U.S. 558, 572 (2003). Moreover, the Court declared, the Due Process Clause broadly protects "the autonomy of the person," including "personal decisions relating to marriage, procreation, contraception, family relationships, child rearing, and education." *Id.* at 573–74 (citing *Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 851 (1992)).

102.    Even so, in 2008, the voters of Arizona approved an amendment to the state

constitution that banned same-sex marriage. *See* Ariz. Const., art. 30, § 1.

103.    Five years later, in 2013, the *Windsor* case reached the U.S. Supreme Court. In June of last year, the *Windsor* Court struck Section 3 of DOMA as unconstitutional under the Fifth Amendment. The Court relied on *Lawrence*, among other cases, and declared that DOMA's restrictive definition of marriage as "only a legal union between one man and one woman" violated the principles of due process and equal protection and was therefore unconstitutional. *Windsor*, 133 S.Ct. at 2695–96.

104.    Years after *Lawrence*, and months after *Windsor*, the State of Arizona continues to discriminate against gay couples by doing what the federal government (wrongly) accomplished through DOMA: denying same-sex couples their fundamental right to marry.

105.    Like the offending provision of DOMA (Section 3), Arizona law imposes inequality on same-sex couples in violation of the U.S. Constitution.

106.    The text of Article 30, section 1 of the Arizona Constitution, which defines marriage as the "union of one man and one woman," mirrors the text in Section 3 of DOMA that was stricken as unconstitutional by the Supreme Court in *Windsor*. *Compare* Ariz. Const. art. 30, § 1 ("Only a union of one man and one woman shall be valid or recognized as a marriage in this state."), *with* 1 U.S.C. § 7 ("the word 'marriage' means only a legal union between one man and one woman as husband and wife").

107.    Because the Marriage Discrimination Laws facially discriminate against same-sex couples, they are plainly infirm under the Equal Protection and Due Process Clauses of the Fourteenth Amendment. Additionally, the Marriage Discrimination Laws are unconstitutional under the Full Faith and Credit Clause of the federal constitution because they prohibit recognition of valid same-sex marriages legally executed and recorded under the public acts, records, and judicial proceedings of other states.

III.    CLAIMS FOR RELIEF

<u>FIRST CLAIM</u>

Enforcement of Full Faith and Credit Clause
and 42 U.S.C. § 1983

108.    Plaintiffs incorporate paragraphs 1–107 as though fully set forth.

109.    The Arizona Constitution explicitly recognizes the U.S. Constitution as supreme. *See* **Ariz. Const. art. 2, § 3 ("The Constitution of the United States is the supreme law of the land.").**

110.    The U.S. Cons**titution provides in part that "[f]ull faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state." U.S. Const. art. IV, § 1. Thus, just as Arizona gives full faith and credit to the legal** out of state marriage of an opposite sex couple, it must likewise, under both the Arizona Constitution and the Full Faith and Credit Clause of the U.S. Constitution, give full faith and credit to the legal out of state marriages of same sex couples.

111.    Taken together, A.R.S. §§ 25-112(A) and -101 deny the validity of out-of-state marriages, such as, for example, the marriages of Plaintiffs Joseph Connolly and Terrel Pochert; Mason Hite and Chris Devine; and others similarly situated. Therefore, facially and as applied to Plaintiffs and Married Class Members, these statutes violate the Full Faith and Credit Clause of the U.S. Constitution.

112.    Granted, the *Windsor* Court did not reach and therefore let stand Section 2 **of DOMA, which provides that no state "shall be requir**ed to give effect to any public **act" by another state that validates same** sex marriage. 28 U.S.C. § 1738C.

113.    But, although Congress **"may by general laws prescribe the manner in** which [the public acts of other states] shall be proved, and the effect thereof[, ]" U.S. Const. art. IV, § 1, Congress may not supersede the federal constitution, including the Full Faith and Credit Clause.

114.    And so, if any Defendant seeks to rely on Section 2 of DOMA in support of the Arizona laws refusing to recognize valid out-of-state marriages between same sex

~~partners, then this Court should also strike Section 2 of DOMA as an unconstitutional exercise of the authority granted Congress in contravention of the Full Faith and Credit Clause and Article IV of the U.S. Constitution, which in turn violates 42 U.S.C. § 1983.~~

~~115.   Plaintiffs accordingly pray for the relief described in paragraphs 144-150 below.~~

### ~~SECOND CLAIM~~
Violation of Equal Protection Clause of the
Fourteenth Amendment and 42 U.S.C. § 1983

~~116.~~ 117.   Plaintiffs incorporate paragraphs 1-116 ~~115~~ as though fully set forth.

~~117.~~ 118.   The Equal Protection Clause of the Fourteenth Amendment requires **consideration whether the classifications drawn by a state law constitute "an arbitrary and invidious discrimination."** *Loving*, 388 U.S. at 10. A state law that singles out homosexuals for disfavored treatment and imposes inequality on them violates the principle of equal protection under the law. *Windsor*, 133 S.Ct. at 2694–96.

~~118.~~ 119.   The Marriage Discrimination Statutes ~~Laws~~ do exactly that. For example, A.R.S. Sections 25-101(C), -112(A), and -125(A), together with article 30, section 1 of the state constitution, restrict access to marriage to opposite-sex couples, thereby denying homosexuals the right to marry their chosen partner.

~~119.~~ 120.   These laws treat similarly situated persons differently by conferring the benefits and protections of marriage on ~~to~~ heterosexual but not homosexual couples. Stated differently, these Arizona laws single out homosexuals for disfavored treatment.

~~120.~~ 121.   For these reasons, the Marriage Discrimination Statutes ~~these Arizona laws~~ violate the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution.

~~121.~~ 122.   Defendants, under color of state law, have deprived and, absent relief from this Court, will continue to deprive Plaintiffs ~~and the Class~~ of their fundamental right to marry and thereby enjoy, in the words of the Supreme Court in *Windsor*, "dignity

and status of immense import," all in violation of the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution, which in turn violates 42 U.S.C. § 1983.

123.    The Marriage Discrimination Statutes classify the Plaintiffs based on sexual orientation. In the Ninth Circuit, when considering Equal Protection claims, the district court reviews classifications based on sexual orientation using heightened scrutiny, not rational basis. *See SmithKline Beecham v. Abbott Labs*, 2014 WL 211807 at *6 (9th Cir.) (Jan. 21, 2014) ("*Windsor* requires that heightened scrutiny be applied to equal protection claims involving sexual orientation.").

~~122.~~124.    Plaintiffs accordingly pray for the relief described in paragraphs 139-145~~144-50~~ below.

SECOND CLAIM
~~THIRD CLAIM~~
Violation of Due Process Clause of the Fourteenth Amendment
and 42 U.S.C. § 1983

~~123.~~125.    Plaintiffs incorporate paragraphs 1-124~~-122~~ as though fully set forth.

~~124.~~126.    The Due Process Clause of the Fourteenth Amendment of the U.S. Constitution provides that no "State [shall] deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, § 1.

~~125.~~127.    "Marriage is one of the 'basic civil rights of man,' fundamental to our very existence and survival. To deny this fundamental freedom . . . is surely to deprive all the State's citizens of liberty without the due process of law." *Loving*, 388 U.S. at 12 (citation omitted).

~~126.~~128.    The Marriage Discrimination Statutes~~Laws~~ deprive Plaintiffs of the due process of law under the federal constitution because the State of Arizona deprives~~takes away from~~ gay citizens the opportunity to marry the person of their choosing and, in other cases, fails to~~or~~ recognize as valid their out-of-state marriages.

~~127.~~129.    Because the Due Process Clause of the Fourteenth Amendment

protects the 'fundamental freedom' to marry, along with the settled rights that attend valid out-of-state marriages, even the voters of Arizona may not infringe this constitutional right.

130.   The Marriage Discrimination Statutes classify the Plaintiffs based on sexual orientation. In the Ninth Circuit, when considering substantive Due Process claims, the district court reviews classifications based on sexual orientation using heightened scrutiny. *Witt v. Department of the Air Force*, 527 F.3d 806 (9th Cir.2008).

~~128~~ 131.   Defendants, under color of state law, have deprived and, absent relief from this Court, will continue to deprive Plaintiffs ~~and the Class~~ of their fundamental right to marry and thereby enjoy, in the words of the Supreme Court in *Windsor*, "**dignity and status of immense import,**" all in violation of the Due Process Clause of the Fourteenth~~Fifth~~ Amendment to the U.S. Constitution, which in turn violates 42 U.S.C. § 1983.

~~129~~ 132.   Plaintiffs accordingly pray for the relief described in paragraphs 139-145~~144–50~~ below.

~~CLASS ALLEGATIONS~~

~~130.   Plaintiffs incorporate paragraphs 1–129 as though fully set forth.~~

~~131.   Plaintiffs bring this action under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves—and all other similarly situated persons—who reside in the State of Arizona, that is, gay and lesbian couples who either (a) desire to be married in Arizona ("Unmarried Class Members") or, (b) having married elsewhere, wish to have their marriage recognized as valid in Arizona ("Married Class Members") (together referred to as "Class Members" or "the Class").~~

~~132.   Numerosity:~~ ~~Today, over 650,000 same-sex couples live in the United States. The U.S. Census Bureau estimates that the percentage of cohabiting same-sex couples living in Arizona equals the percentage living in, for example, the state of New York, the fourth most populous state in the nation. In 2010, the U.S. Census Bureau~~

estimated that roughly 21,000 same-sex couples live in Arizona. The Class is therefore so numerous as to make joinder of all Class Members impractical. Maintaining this action as a class action is superior to other available methods of adjudication because it will promote the convenient administration of justice and achieve a fair and efficient adjudication of the controversy given the number of potential Class Members. Fed.R.Civ.Proc. 23(a)(1).

133.   Commonality: The action is manageable as a class action because proofs are the same for all members of the Class on all major issues. Plaintiffs present no disputed questions of fact for resolution because all members of the Class are either already legally married under the laws of another state or wish to be married in Arizona. The common questions of law presented by all Class Members include the following:

a.   whether the Marriage Discrimination Laws violate the Equal Protection or Due Process Clauses of the Fourteenth Amendment of United States Constitution; and,

b.   whether the Marriage Discrimination Laws violate the Full Faith and Credit Clause of the United States Constitution.

134.   Typicality: **The Plaintiffs' claims are typical of the claims of the Class** Members. By denying Plaintiffs the right to marry, or recognize their out-of-state marriage, the State of Arizona, through Defendants, denies Plaintiffs (and the Plaintiff Class) access to numerous state law benefits and protections. Plaintiffs accordingly are similarly situated with and have suffered injuries similar to those suffered by the Class Members. Fed.R.Civ.Proc. 23(a)(3).

135.   Adequacy: Plaintiffs will fairly and adequately protect the interests of all Class Members in the prosecution of this action and in the administration of all matters relating to their claims. Fed.R.Civ.Proc. 23(a)(4).

136.   Type of action: Because Defendants acted on grounds that apply to the Class, and Plaintiffs seek no monetary damages, final injunctive relief and corresponding

declaratory relief for all Class Members is appropriate. Fed.R.Civ.Proc. 23(b)(2).

## APPLICATION FOR PERMANENT INJUNCTION

137 133.     Plaintiffs incorporate paragraphs 1-132136 as though fully set forth.

134.    Although opposite-sex couples enjoy the benefits of marriage in Arizona, the Defendants' denial of Plaintiffs' right to marry, or have their out-of-state marriages recognized as valid in Arizona, has resulted and will result in concrete, irreparable harm to Plaintiffs by denying them the rights, protections, benefits, and obligations associated with marriage, including by way of example only:

    a.   Community property rights and exemptions. A.R.S. §§ 33-431, 33-452, 33-453, 33-457, 33-1102, 33-1103, 33-1121.01, 33-1126, 33-1131, 33-1151.

138.   Spousal pension benefits. Plaintiffs have been wronged and want Defendants stopped from perpetrating similar wrongs on others.

    b.   A.R.S. §§ 23-775, 23-1046, 38-807, 38-846.

    c.   Continued coverage of disability insurance. A.R.S. § 20-1377.

    d.   Probate and intestate succession rights and responsibilities. A.R.S. §§ 14-2102, 14-2301, 14-2402, 14-2404, 14-3203, 14-3971 14-5301, 14-6212, 36-831; A.A.C. R4-12-602.

    e.   Rights and interests related to trusts. A.R.S. §§ 14-7418, 14-7422 14-10505, 14-10602.

    f.   Enforcement of the Family Medical Leave Act. A.A.C. R2-5A-D601.

    g.   Other spousal survivorship rights. A.R.S. §§ 12-259.03, 12-612, 12-613.

    h.   The right to bring claims and seek damages in civil lawsuits. A.R.S. §§ 12-612, 12-613, 20-259.03.

    i.   The privilege not to testify against one another. A.R.S. §§ 12-2231, 12-2232, 13-4062.

    j.   The ability to file a joint tax return. A.R.S. § 43-309.

    k.   Other tax exemptions and benefits. A.R.S. §§ 28-5802, 28-5811, 43-1111, 43-1022.

l. Crime victims' rights and protections. A.R.S. §§ 13-601, 13-701, 13-703, 13-713, 13-752, 13-3610, 13-3611, 13-4401, 13-4403; AZ A.D.C. R10-4-108.

m. Statutory privacy rights. A.R.S. §§ 12-761, 39-123, 39-124.

n. The ability to make medical decisions without first obtaining a healthcare power of attorney or durable power of attorney. A.R.S. § 36-3231.

139. 135.    Plaintiffs have suffered and will suffer permanent and personal harm absent an order from this Court permanently enjoining Defendants from enforcing the Marriage Discrimination Statutes Laws restricting the right of same-sex couples to marry or be married in Arizona.

140.   Plaintiffs and the Plaintiff Class accordingly seek an order permanently enjoining the enforcement of Defendants from enforcing the Marriage Discrimination Statutes. Laws.

141.   Although opposite sex couples enjoy the benefits of marriage in Arizona, the Defendants' denial of Plaintiffs' right to marry, or have their out-of-state marriage recognized as valid in Arizona, has resulted and will result in concrete, irreparable harm to Plaintiffs including, by way of example only: denial of spousal pension benefits; the preference granted to heterosexual couples in adoption proceedings (A.R.S. § 8-103); heterosexual spouses' (but not same-sex partners') receipt of workers' compensation death benefits (A.R.S. § 23-1046(A)(2)); denial of similar burial (A.R.S. § 36-831), community property (A.R.S. § 25-211) and early voting rights (A.R.S. § 16-548(B); the right to file joint state tax returns; denial of the privilege not to testify against one's spouse (A.R.S. § 13-4062); loss of intestacy rights (A.R.S. § 14-2102); the right to file a wrongful death suit if his or her partner is killed (A.R.S. § 12-612(A)); and so on.

142. 136.    The Marriage Discrimination Laws also deny Plaintiffs eligibility for federal benefits associated with taxes, immigration, social security, and many other areas. Many rights and protections offered by the federal government turn on the law of the state in which the couple lives. See, e.g., 29 C.F.R. § 825.122(b)(eligibility under Family Medical Leave Act based on recognition of marriage under law of the state of residence at

time of application); 42 U.S.C. § 416(h)(1)(A)(i)(eligibility for social security benefits (same)).

143 137.	**The Court's order permanently** enjoining Defendants from enforcing state law banning same-sex marriage will prevent continued harm to Plaintiffs.

138.	Plaintiffs request no relief compelling any person, church, or organization to solemnize same-sex marriages. Rather, Plaintiffs request relief against the Defendants to, for example, issue and, following the marriage ceremony or other solemnization, record the marriage licenses returned by Plaintiffs.

IV.	PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment on Claims One, Two and Two Three as follows:

144 139.	Plaintiffs and the Class respectfully request a declaratory judgment and an order for permanent injunctive relief under (a) Federal Rules of Civil Procedure 57 and 65, (b) 28 U.S.C. § 2201(a), and (c) any "further necessary or proper relief" under 28 U.S.C. § 2202.

145 140.	Under these rules and statutes, Plaintiffs request that the Court construe art. 30, §1 of the Arizona Constitution, and the other Marriage Discrimination Statutes Laws, and enter a declaratory judgment that these and all other laws of the State of Arizona banning, refusing to recognize, or otherwise restricting same-sex marriage, violate the United States Constitution and 42 U.S.C. § 1983.

146.	Plaintiffs also respectfully ask this Court to construe Section 2 of DOMA, and, if necessary, to enter a declaratory judgment stating that, if Defendants contend that Section 2 permits the State of Arizona to avoid giving full faith and credit to a same-sex marriage legally entered into in another state, then Section 2 exceeds the authority granted to Congress under Article IV, and is therefore unconstitutional.

147 141.	Based on these declarations, Plaintiffs respectfully seek entry of a

permanent injunction ~~in favor of them and the Class~~ (a) enjoining the Defendants, acting in their official capacities, and all others under their supervision and control, and those acting in concert with them, under color of the law of the State of Arizona, from enforcing art. 30, § 1 of the Arizona Constitution and any Arizona statute that excludes gay men and women from access to marriage in the State of Arizona; and, (b) ~~requiring Defendants Janice K. Brewer and Thomas C. Horne, in their official capacities as Governor and Attorney General of the State of Arizona, respectively, to recognize the valid California marriages of Joseph Connolly and Terrel Pochert, and Mason Hite and Chris Devine, and all other similarly situated same-sex couples who have married out-of-state, as valid in the State of Arizona; and, (c)~~ compelling Defendants ~~Defendant Michael K. Jeanes~~ to accept the application of, issue marriage licenses to, and record the returned marriage licenses from the unmarried plaintiffs (e.g., Suzanne Cummins and Holly Mitchell, and Clark Rowley and David Chaney). ~~, and all other same-sex couples residing in Maricopa County, Arizona who wish to marry and otherwise meet the qualifications for marriage under the laws of Arizona, A.R.S. § 25-101 *et seq.*~~

~~148.~~ 142.    **Plaintiffs request a "speedy hearing" under** Rule 57, Fed.R.Civ.P~~Proc~~.  (Declaratory Judgment) ("~~)("~~The court may order a speedy hearing of a declaratory-**judgment action.").** Because Plaintiffs present important legal questions for resolution, and no disputed material questions of fact, the Court would be justified in scheduling the case for early hearing on motion for summary judgment.

143.    Plaintiffs request an award of the costs and expenses of this action, **including attorneys' fees. 42 U.S.C.** § 1988(b) ()~~(~~if plaintiff "prevails" in section 1983 **action, authorizing discretionary award of "a reasonable attorney's fee" to plaintiff);** *see Rhodes v. Stewart*, 488 U.S. 1, 4 (1988) ()~~(~~per curiam) ()~~(~~injunction or declaratory usually **satisfies test for award of prevailing party attorney's fees);** *Lefemine v. Wideman*, 133 S.Ct. 9, 11 (2012) ()~~(~~per curiam) ()~~(~~same); *Higher Taste, Inc. v. City of Tacoma*, 717 F.3d 712 (9th Cir. 2013).

149. 144.    Plaintiffs request entry of an award of nominal damages in an amount not to exceed $1. *See Carey v. Piphus*, 435 U.S. 247 (1978) (claim for violation of constitutional rights entitles plaintiff to award of nominal damages); *Draper v. Coombs*, 792 F.2d 915, 921 (9th Cir. 1986) (nominal damages recoverable for deprivation of constitutionally-based right); *Floyd v. Laws*, 929 F.2d 1390, 1402 (9th Cir. 1991) (upon proof of Section 1983 claim, award of nominal damages mandatory, even if plaintiff proved no actual damages).

150. 145.    Plaintiffs request any further relief that the Court determines may be just or equitable.

DATED: February 10 January 6, 2014.                                        By_____

Shawn K. Aiken
Heather A. Macre
William H. Knight
Stephanie McCoy Loquvam
2390 East Camelback Road
Suite 400
Phoenix, Arizona 85016


By  s/ Ryan J. Stevens – 026378
Ryan J. Stevens
GRIFFEN & STEVENS LAW FIRM, PLLC
609   and
Ellen Aiken
Sacks Tierney, P.A.
4250 North Humphreys Street Drinkwater Blvd., 4th Floor
Flagstaff Scottsdale, Arizona 86001 85251-3693


By  s/ Mikkel Steen Jordahl -- 012211
Mikkel Steen Jordahl
MIKKEL (MIK) JORDAHL PC
114 North San Francisco, Suite 206
Flagstaff, Arizona 86001

By  s/ Mark Dillon -- 014393
Mark Dillon
DILLON LAW OFFICE
PO Box 97517
Phoenix, Arizona  85060

Attorneys~~Attorney~~ for Plaintiffs

I hereby certify that on this 10th~~6th~~ day of February~~January~~, 2014 I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and a copy was electronically transmitted to the following:~~.~~

Kathleen P. Sweeney
Todd M. Allison
Assistant Attorneys General
1275 West Washington
Phoenix, Arizona 85007-2997
kathleen.sweeney@azag.gov
todd.allison@azag.gov
Attorneys for Defendant Michael K. Jeanes, In His Official Capacity As Clerk Of The Superior Court Of Maricopa County, Arizona

_/s/ DeAnn M. Buchmeier_
S:\Connolly - Pochert\21401001\Pleadings\Complaint-1Am 140210.docx

_Amended_ Complaint
~~:::~~Connolly et. al. v. _Roche_~~Brewer~~ et al.

34