1  SHAWN K. AIKEN
2  2390 East Camelback Road, Suite 400
   Phoenix, Arizona  85016
   Telephone:  (602) 248-8203
3  E-Mail: docket@ashrlaw.com
   E-Mail: ska@ashrlaw.com
4  Shawn K. Aiken – 009002
   Heather A. Macre – 026625
5  William H. Knight – 030514
   Stephanie McCoy Loquvam – 029045
6
   GRIFFEN & STEVENS LAW FIRM, PLLC
7  609 North Humphreys Street
   Flagstaff, Arizona 86001
8  Phone: (928) 226-0165
   E-Mail: stevens@flagstaff-lawyer.com
9  Ryan J. Stevens – 026378

10 MIKKEL (MIK) JORDAHL P.C.
11 114 North San Francisco, Suite 206
   Flagstaff, Arizona 86001
   Phone: (928) 214-0942
12 E-Mail: mikkeljordahl@yahoo.com
   Mikkel Steen Jordahl – 012211
13
   DILLON LAW OFFICE
14 PO Box 97517
   Phoenix, Arizona  85060
15 Phone: (602) 224-4468
   E-MAIL: dillonlaw97517@gmail.com
16 Mark Dillon— 014393
   *Attorneys for Plaintiffs*

17                    UNITED STATES DISTRICT COURT

18                         DISTRICT OF ARIZONA

19 Joseph Connolly and Terrel L. Pochert; Suzanne        Case No. **2:14-cv-00024-JWS**
20 Cummins and Holly N. Mitchell; Clark Rowley
   and David Chaney; R. Mason Hite IV and
21 Christopher L. Devine; Meagan and Natalie          AMENDED COMPLAINT FOR
   Metz; Renee Kaminski and Robin Reece; Jeffrey      PERMANENT INJUNCTION
22 Ferst and Peter Bramley,                           AND DECLARATORY
                                                      JUDGMENT
23                                Plaintiffs,
   v.
24
   Chad Roche, In His Official Capacity As Clerk
25 Of The Superior Court Of Pinal County,
   Arizona; Michael K. Jeanes, In His Official
26 Capacity As Clerk Of The Superior Court Of
   Maricopa County, Arizona; and Deborah Young,
27 In Her Official Capacity As Clerk Of The
   Superior Court Of Coconino County, Arizona,
28
                                Defendants.

I.   NATURE OF THE CASE AND BACKGROUND TO CLAIMS FOR RELIEF

1.     Over ten years ago, the Supreme Court of the United States recognized that the federal constitution protects the choice to have an intimate relationship with a same-sex partner "without intervention of the government." *Lawrence v. Texas*, 539 U.S. 558, 578 (2003).

2.     In June 2013, the Supreme Court struck Section 3 of the Defense of Marriage Act (DOMA), which barred any federal marital benefits to same-sex couples who were legally married in states that permitted such marriages. *United States v. Windsor*, 133 S.Ct. 2675 (2013).

3.     Today, Plaintiffs ask this Court to follow the reasoning in *Windsor* and strike Arizona's ban on same-sex marriage found in Article 30, Section 1 of the Arizona Constitution (and other laws of the State of Arizona).

4.     Plaintiffs seek this Court's declaration that the U. S. Constitution bars Arizona from the same discriminatory conduct that the *Windsor* court declared unconstitutional.

   A.   **Arizona's Marital Laws Prohibit Same**-Sex Marriage.

5.     In 1996, immediately following Congressional passage of DOMA, Arizona's forty-second legislature banned same-sex marriage. *See* Arizona Revised Statutes ("A.R.S.") § 25-101(C) ("Marriage between persons of the same sex is void and prohibited."). That same Arizona legislature also prohibited recognition of same-sex marriages that were otherwise valid under another state's law. *See* A.R.S. § 25-112(A) ("Marriages valid by the laws of the place where contracted are valid in this state, except marriages that are void and prohibited by section 25-**101**.").

6.     Three years later, in 1999, the Arizona legislature approved amendments to several statutes related to marriage, including a statutory definition of marriage as between a male and a female person. *See* A.R.S. § 25-**125**(A) ("A valid marriage is contracted by a male person and a female person with a proper marriage license[.]"). The legislature also provided that persons "shall not be joined in marriage in [Arizona] until a

license has been obtained for that purpose from the clerk of the superior court in any county of this state." A.R.S. § 25-121(A).

7.     **In 2003, the Arizona Court of Appeals upheld Arizona's definition of** marriage. *See Standhardt v. Superior Court*, 77 P.3d 451 (App. 2003), *review denied* (May 25, 2004) (accepting special action jurisdiction over a challenge to the clerk of the court's refusal to issue a marriage license to a same sex couple).

8.     In 2006, Arizona voters rejected an amendment to the state constitution banning same-sex marriage. In 2008, the Arizona legislature referred and the voters of Arizona passed Proposition 102, also known as the *Marriage Protection Amendment*, which amended the Arizona Constitution to define marriage as between one man and one woman.   *See* **Ariz. Const. art. 30, § 1 ("Only a u**nion of one man and one woman shall be **valid or recognized as a marriage in this state.").**

9.     The Arizona Constitution now prevents gay men and women from entering into marriage with their same-sex partner.

10.     The Arizona Constitution further prohibits the State from honoring a valid, same-sex marriage permitted by another jurisdiction.

11.     As a result, same-sex couples who desire to marry cannot do so in Arizona. Moreover, Arizona denies recognition of the marriages of those gay men and women who have entered into valid marriages elsewhere in the United States.

12.     And, unlike many states, including, for example, Nevada, the Arizona legislature has never authorized so-**called "domestic partnerships," although a few** Arizona cities have afforded some limited benefits to same-sex local residents. Same-sex couples therefore have no statewide guarantee of the rights—let alone the status and dignity—associated with marriage in the State of Arizona.

**B.     Arizona's Ban on Same-**Sex Marriage Violates the Equal Protection and Due Process Clauses of the Fourteenth Amendment.

13.     In 1996, the Supreme Court confirmed that the U.S. Constitution prohibits discrimination on the basis of sexual orientation. *Romer v. Evans*, 517 U.S. 620, 635–36

(1996).

14.      Nevertheless, today, twenty-eight states have constitutional prohibitions against same-sex marriage and another four states—West Virginia, Wyoming, Pennsylvania, and Indiana—prohibit same-sex marriage under state law.

15.      However, deep change has taken place elsewhere in the country. In 2004, Massachusetts allowed gay marriage. Many states followed suit. In late 2013, Hawaii became the sixteenth state to recognize same-sex marriage.

16.      In December 2013, the U.S. District Court for the District of Utah and the unanimous New Mexico Supreme Court made Utah and New Mexico the seventeenth and eighteenth states to join the list of states that recognize same-sex marriage. Today, same-sex marriage is allowed in states where over forty percent of Americans live.

17.      **And, in June 2013, the U.S. Supreme Court's opinion** in *Windsor* confirmed a profound doctrinal change in the law whose origins stretch back forty-six years to the historic decision in *Loving v. Virginia*, **388 U.S. 1, 12 (1967) (recognizing marriage as "one of the 'basic civil rights of man[ ]'"(citation omit**ted)).

18.      In *Windsor*, the Supreme Court held that the definition of marriage in **Section 3 of the federal Defense of Marriage Act ("DOMA") as "a legal union between one man and one woman" was unconstitutional as a deprivation of equal protection under** the Fifth Amendment to the U.S. Constitution. More precisely, *Windsor* held that the definition of marriage as a legal union between a man and a woman was unconstitutional because it denied same-**sex married couples "the benefits and responsibilities that come** wit**h the federal recognition of their marriages." 133 S.Ct. at 2693.**

19.      Three federal district courts, including one in the Ninth Circuit, have since followed that rationale by applying the Equal Protection Clause of the Fourteenth Amendment to the states and striking state laws that either banned same-sex marriage or recognition of such marriages. *Kitchen v. Herbert*, 2013 WL 6697874 (D. Utah Dec. 20, 2013); *Obergefell v. Wymyslo*, 2013 WL 6726688 (S.D. Ohio Dec. 23, 2013); *Bishop v. United States ex rel. Holder*, 2014 WL 116013 (N.D. Okla. Jan. 14, 2014).

20.     In an opinion issued less than one month ago, the Ninth Circuit held that peremptory juror strikes based on a person's sexual orientation are unconstitutional under the Equal Protection Clause (using a "heightened scrutiny" standard to evaluate such classifications). *SmithKline Beecham v. Abbott Labs*, 2014 WL 211807 (9th Cir. Jan. 21, 2014).

21.     **The "freedom to marry has long been recognized as one of the vital personal rights essential to the orderly pursuit of happiness by free men."** *Loving v. Virginia*, 388 U.S. 1, 12 (1967).

22.     This Court should reach the conclusion that flows from the decisions in *Loving v. Virginia*, *Romer v. Evans*, *Lawrence v. Texas* and *United States v. Windsor,* namely that laws prohibiting same-sex marriage violate the Constitutional requirements of equal protection and due process. Plaintiffs respectfully ask that this Court enforce their rights to equal protection and due process under the United States Constitution, and declare as unconstitutional Article 30, Section 1 of the Arizona Constitution and all similar marital statutes, including A.R.S. § 25-101(C), -112(A), and -125(A) **("Marriage Discrimination Statutes").**

23.     Plaintiffs request that the Court permanently enjoin the enforcement of the Marriage Discrimination Statutes and all other provisions of Arizona law that may deny Plaintiffs equal access to the benefits of marriage in the State of Arizona, including the right of same-sex couples to marry in or have their out-of-state marriages recognized by the State of Arizona.

II.     JURISDICTION, PARTIES AND VENUE

A.     Federal Question Jurisdiction

24.     Because Plaintiffs allege violations of rights arising under the Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. § 1983, this Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3).

25.     Given the far-reaching doctrinal developments in the law confirmed by the decision in *Windsor*, Plaintiffs raise substantial federal questions despite the contrary

reasoning applied over forty years ago in *Baker v. Nelson*, 409 U.S. 810 (1972) (summarily **dismissing "for want of substantial federal question"** an appeal from a Minnesota Supreme Court decision upholding a statute that restricted marriage to opposite-sex couples). *Cf. Hicks v. Miranda*, 422 U.S. 332, 344**–45 (1975) ("unless and until the** Supreme Court should instruct otherwise, inferior federal courts had best adhere to the view that if the Court has branded a question as unsubstantial, it remains so except when **doctrinal developments indicate otherwise"). Over the past forty years, the** many intervening decisions from the Supreme Court in this area of the law, including *Romer*, *Lawrence*, and *Windsor***, confirm that what was once "unsubstantial" in 1972 now make the question presented here "substantial."**

B.    The Plaintiffs

26.    Today, over 650,000 same-sex couples live in the United States. The U.S. Census Bureau estimates that the percentage of cohabiting same-sex couples living in Arizona equals the percentage living in, for example, the state of New York, the fourth most populous state in the nation. In 2010, the U.S. Census Bureau estimated that roughly 21,000 same-sex couples live in Arizona.

27.    Plaintiffs live across Arizona, including the three most populous counties—Maricopa, Pima, and Pinal—where 81 percent of all Arizonans reside.

*Joe and Terry*

28.    **Plaintiffs Joseph Connolly ("Joe") and Terrel Pochert ("Terry") reside in** Pinal County, Arizona.

29.    **Joe and Terry met in Michigan in 1995 and, after Terry's retirement,** moved to Arizona in 1997 where they continue to live together in a committed relationship.

30.    For several years, Joe and Terry have lived together in Pinal County, Arizona. They own a home, have a joint bank account, and otherwise live as many other married couples do. They have been long-time, active members of a Lutheran church congregation in Maricopa County, Arizona. And, like many other Arizona couples and

families, they hoped to marry in their state of residence and enjoy the benefits that flow from recognition of their marriage.

31.     Unfortunately, they lived in Arizona where the law prohibited their marriage.

32.     On May 15, 2008, the California Supreme Court struck down the California statutes limiting marriage to opposite-sex couples. *See In re Marriage Cases*, 183 P.3d 384, 427 (Cal. 2008) ("[T]he California Constitution properly must be interpreted to guarantee this basic civil right to [marry to] all individuals and couples, without regard to their sexual orientation.").

33.     As a result, in mid-June 2008, county officials across California began issuing marriage licenses to same-sex couples.

34.     On July 4, 2008, following this change in California law, Joe and Terry married in that state. A retired pastor of the Lutheran Church in America performed their wedding ceremony under the laws and procedures of the State of California. Later, the County of Riverside, California recorded and issued them a *License and Certificate of Marriage*.

35.      A few months later, though, the voters of California approved Proposition 8, which added the following language to the California Constitution: "Only marriage between a man and a woman is valid or recognized in California."

36.     The passage of Proposition 8 ended the issuance of marriage licenses to same-sex couples in California, but not before over 15,000 same-sex marriage licenses had been issued, including one to Joe and Terry.

37.     Although the California Supreme Court later upheld Proposition 8, *Strauss v. Horton*, 207 P.3d 48 (Cal. 2009), the court also held that Proposition 8 had no effect on the already-issued licenses, which remained valid under California law.

38.     Because Joe and Terry were married in California before the passage of Proposition 8, they are in a valid California marriage. *See Strauss v. Horton*, 207 P.3d 48, 119 (Cal. 2009) (holding that Proposition 8 did not "invalidate retroactively the marriages

of same-sex couples performed prior to its effective date").

39.     Nevertheless, the laws of Arizona prohibit the State from recognizing Joe and Terry's legal California marriage. Their marriage remains invalid in their home state to this day.

40.     On January 31, 2014, Joe and Terry went to the Office of the Clerk of the Superior Court of Pinal County ("Pinal County Clerk"), 971 Jason Lopez Circle, Florence, Arizona, to apply for an Arizona marriage license.

41.     The assistant clerk indicated that she was unsure about giving Joe and Terry an application. She placed a call to her superiors.

42.      When she finished her call, the clerk informed Joe and Terry that she could not take their application.

43.     The clerk then told Joe and Terry that she personally wished she could issue them a marriage license, but they would have to contact Odette Apodaca, the Case Management Director for the Pinal County Clerk, to inquire about why she could not.

44.     Joe and Terry e-mailed Odette Apodaca to further inquire why they were not even permitted to fill out an application.

45.     Odette Apodaca replied by referring Joe and Terry to A.R.S. § 25-101.

46.     Under the Marriage Discrimination Statutes, Arizona denies to Joe and Terry the rights, protections, benefits, and obligations associated with marriage.

*Suzanne and Holly*

47.     Plaintiffs Suzanne Cummins and Holly Mitchell reside in Maricopa County, Arizona.

48.     Holly and Suzanne have been in a committed relationship since 2007. For years, they have lived together in the same household, sharing their finances, responsibilities, and otherwise living together as many other married couples do.

49.     Holly and Suzanne actively volunteer their time to various community childcare endeavors. Suzanne, for example, is a troop leader in the Purple Sage Council, a local chapter of the Girl Scouts of America, and both Holly and Suzanne serve as foster

care mentors.

50.    Like many other Arizona couples and families, they hoped to marry in their state of residence and enjoy the benefits that flow from recognition of their marriage.

51.    Unfortunately, they live in Arizona where the law prohibits their marriage.

52.    Because the law of Arizona prohibits them from becoming married and affirmatively denies the validity of any marriage into which they might legally enter in another state, Holly and Suzanne cannot validate their union as a legal marriage in their home state.

53.    Despite having been denied the dignity and benefits that the State of Arizona affords others solely because they are a same-sex couple, Holly and Suzanne continue to live as a married couple.

54.    In 2008, Holly and Suzanne began planning for the future of their family. They decided to foster and ultimately adopt children into their family.

55.    In September 2009, Holly and Suzanne began attending the Partnering for Safety and Permanence-Model Approach to Partnership in Parenting ("PS-MAPP") classes required to become licensed foster parents in Arizona.

56.    Holly and Suzanne became certified foster parents in late 2009.

57.    Holly and Suzanne wished to grow their family by becoming permanent adoptive parents.

58.    In November 2009, they received their first foster care children.

59.    Both children were quickly approved for adoption. Holly and Suzanne adopted the younger child in November 2010 and the older child in July 2011.

60.    Suzanne is the legal adoptive parent of both children.

61.    Holly and Suzanne continue to serve as foster parents; they are currently the foster parents of an 18-month-old child in addition to their two adopted children.

62.    Under the Marriage Discrimination Statutes, Arizona denies to Holly and Suzanne the rights, protections, benefits, and obligations associated with marriage.

*Clark and David*

63.    Plaintiffs Clark Rowley and David Chaney are longtime residents of Maricopa County, Arizona.

64.    Clark and David met in Arizona and have been in a committed relationship for over five years.

65.    They live together as life partners as many other married couples do, and share household duties and responsibilities.

66.    For years, they have wanted to confirm their love and lifelong commitment to each other, but they live in Arizona where same-sex marriage is prohibited and where out-of-state, legal same-sex marriages are not recognized as valid.

67.    In 2010, Clark and David decided that they wanted to marry; they discussed becoming legally married in a state that allowed same-sex marriage.

68.    Realizing that their out-of-state marriage would not be honored in Arizona and that they truly wished to marry in their home state, Clark and David instead decided to have a commitment ceremony because Arizona offered them no alternative to validate their union.

69.    On October 9, 2010, Clark and David held a commitment ceremony before the fountains at the Scottsdale Civic Center in testimony to their love and commitment to one another in front of over 300 of their closest friends and family.

70.    Thereafter, Clark and David opened a joint bank account; they have shared their finances ever since.

71.    Clark and David wish to be legally married in their home state of Arizona, but they have not and cannot be legally married in Arizona.

72.    Under the Marriage Discrimination Statutes, Arizona denies to Clark and David the rights, protections, benefits, and obligations associated with marriage.

*Mason and Chris*

73.    Plaintiffs Mason Hite and Christopher Devine reside in Maricopa County, Arizona.

74.     Mason and Chris met in Phoenix in 2001 and have lived together in a committed relationship since 2002. They own a home together, have a joint bank account, and otherwise live as many other married couples do.

75.     For years, Mason and Chris sought the responsibilities, privileges and benefits of marriage. The laws of Arizona, however, prevented their marriage to one another. So, like Joe and Terry, Mason and Chris married in California in 2008. Still today, however, their marriage remains invalid under Arizona law. *See* A.R.S. §25-112(A).

76.     In 2011, Mason and Chris became foster parents licensed by the State of Arizona. They have cared for several foster children since then and are still licensed foster parents.

77.     On February 5, 2014, Mason and Chris went to the Office of the Clerk of the Superior Court of Maricopa County (**"Maricopa County Clerk"**), 601 W. Jefferson Street, Phoenix, Arizona, to apply for an Arizona marriage license.

78.     In the office of the Maricopa County Clerk, they truthfully completed an application provided by an assistant clerk.

79.     When Mason and Chris were called to the counter, they both presented state-issued driver's licenses as requested by Ramona, the clerk on duty.

80.     **Ramona reviewed Mason and Chris' application and their driver's licenses,** handed the application back and told them that she could not accept it or issue them a marriage license.

81.     Ramona told Mason and Chris that it would not be legal for her to issue them a marriage license in Arizona, so they left.

82.     Under the Marriage Discrimination Statutes, Arizona denies to Mason and Chris the rights, protections, benefits, and obligations associated with marriage.

*Meagan and Natalie*

83.     Meagan (nee Pugh) Metz and Natalie Metz live in Flagstaff (Coconino County), Arizona.

84.     They are a same-sex couple who have lived in a committed, monogamous

relationship for the past seven years.

85.     Meagan and Natalie were lawfully married in the State of Washington on May 29, 2013. They now seek to have their marriage recognized by the State of Arizona or obtain a marriage license in Coconino County, Arizona.

86.     After their marriage in the State of Washington, where Meagan grew up, the couple returned to Arizona and hosted a wedding reception in Flagstaff. Their families, friends, and colleagues attended the Flagstaff wedding reception in order to celebrate their marriage. **Meagan and Natalie refer to each other as "wife" and openly** present their union as a marriage.

87.     Meagan and Natalie love one another, own a home jointly in Flagstaff, share a joint bank account, own a vehicle jointly, and raise two dogs (Lucy and Eldon) together. After their marriage in the State of Washington, Meagan changed her surname from Pugh to Metz, in furtherance of their union.

88.     Meagan and Natalie wish to enjoy the same privileges, status, dignity and contractual rights that are conferred by the State of Arizona on individuals in opposite-sex marriages.

89.     Meagan works part-time in the healthcare industry while she pursues further education at Northern Arizona University. Natalie is a well-respected registered nurse, who works in the chemotherapy group of Arizona Oncology. Her patients regularly praise her dedicated care. Recently, one cancer patient's daughter described Natalie as **"an incredible nurse, and beautiful soul."**

90.     Meagan and Natalie desire to have a child in 2014. They intend to engage in the process of artificial insemination of Natalie, who will be the biological mother of the child. Meagan and Natalie want the assurance of knowing that their marriage will be respected by state officials and third parties, and that they will be treated under the law in the same way as opposition sex couples would be treated.

91.     On February 6, 2014, Meagan and Natalie went to the office of the Clerk of the Coconino County Superior Court and applied for a marriage license. Meagan and

Natalie were received by Deborah Young, the duly elected Clerk of the Coconino County Superior Court, who informed Meagan and Natalie that their marriage license application was denied because Arizona law prohibits the marriage of a same-sex couple.

92.    Under the Marriage Discrimination Statutes, Arizona denies to Meagan and Natalie the rights, protections, benefits, and obligations associated with marriage.

*Jeff and Peter*

93.    Plaintiffs Jeffrey Ferst and Peter Bramley live in Pima County, Arizona.

94.    Peter, a native Tucsonan, and Jeff (born in New York) moved to Scottsdale from Canada in early 2012. They decided to marry last year.

95.    Although they could not marry in their home state of Arizona, they formalized their commitment to one another and were married in Riverside County, California on October 11, 2013.

96.    They live together in Tucson where they share a home, bank account, and otherwise live as many married couples do.

97.    Peter owns a public relations company. He has been in business for over 25 years. Jeff is a well-known artist.

98.    **Arizona's refusal to recognize the validity of Jeff and Peter's California** marriage, or permit them to marry in Arizona, harms them by denying them the rights, protections, benefits, and obligations associated with marriage.

*Renee and Robin*

99.    Plaintiffs Renee Kaminski and Robin Reece are long-term residents of Coconino County, Arizona.

100.    Renee and Robin, a same-sex couple, have been in a committed, monogamous relationship for nearly seven years. They hope to be legally married in the State of Arizona.  They wish to enjoy the same privileges, responsibilities and rights that are conferred by the State of Arizona on those in opposite-sex marriages.

101.    Renee and Robin live together in Flagstaff as committed life partners, sharing a household; co-parenting; running a business together; and, sharing in other

responsibilities as any married couple would.

102.    Renee and Robin operate a wedding photography business. Renee is also a registered nurse.

103.    Using a **friend as a donor, and with Renee's assistance, Robin became** pregnant, resulting in the birth of their now three-year-old son.

104.    Robin and Renee raise their son as equal and full co-parents.

105.    On January 24, 2014, Renee and Robin went to the office of the Clerk of the Coconino County Superior Court and applied for a marriage license.

106.    Renee and Robin were received by Deborah Young, the duly elected Clerk of the Coconino County Superior Court, who informed Renee and Robin that their marriage license application was denied because Arizona law prohibits a marriage between same-sex couples.

107.    Because they cannot legally marry in Arizona, Renee and Robin would incur significant expenses arranging for, and traveling to, another state to marry.

108.    Arizona's refusal to permit Renee and Robin to marry harms them by denying them the rights, protections, benefits, and obligations associated with marriage.

C.    The Defendants

109.    This Court has personal jurisdiction over the defendants because they are domiciled in the State of Arizona.

110.    Defendant Michael K. Jeanes, the Clerk of the Court of Maricopa County, Arizona, conducts official business from his office located in this District (in Phoenix, Arizona). In every county of Arizona, the superior court clerk serves as an officer of the judicial branch of state government. Ariz. Const. art. 6, § 23. The duties of the superior court clerk, described generally in A.R.S. § 12-283, include operation of a marriage license office, where Defendant Jeanes receives applications for and issues marriage licenses.

111.    Defendant Deborah Young, the Clerk of the Court of Coconino County, Arizona, conducts official business from her office located in Flagstaff, Arizona.  Like Defendant Jeanes, her duties include operation of a marriage license office, where

Defendant Young receives applications for, and issues, marriage licenses.

112.    Defendant Chad Roche, the Clerk of the Court of Pinal County, Arizona, conducts official business from his office located in Florence, Arizona.  Like Defendants Jeanes and Young, his duties include operation of a marriage license office, where Defendant Roche receives applications for, and issues, marriage licenses.

113.    Defendants, and those under their supervision, interpret and enforce state laws related to marriage in Arizona, especially those constitutional and statutory provisions that deny same-sex couples the right to marry in the State of Arizona.

114.    Plaintiffs seek relief against each Defendant and each Defendant's officers, employees, and agents, and against all persons acting in cooperation with Defendants, or under their supervision, at their direction, or under their control.

115.    The Defendants are entitled to neither judicial nor quasi-judicial immunity on Plaintiffs' claim for injunctive relief. *See Guiden v. Morrow*, 92 F.Appx. 663, 665 (10th Cir. 2004) (court clerk enjoyed quasi-judicial immunity from suits for money damages but "would not be entitled to immunity in a suit seeking injunctive relief").

D.    <u>Venue</u>

116.    Venue lies in this Court under 28 U.S.C. § 1391(b) because every Defendant resides in this District and events giving rise to the claims for relief occurred in the District.

III.    CLAIMS FOR RELIEF

<u>FIRST CLAIM</u>

Violation of Equal Protection Clause of the
Fourteenth Amendment and 42 U.S.C. § 1983

117.    Plaintiffs incorporate paragraphs 1-116 as though fully set forth.

118.    The Equal Protection Clause of the Fourteenth Amendment requires consideration whether the classifications drawn by a state law constitute "an arbitrary and invidious discrimination." *Loving*, 388 U.S. at 10. A state law that singles out homosexuals for disfavored treatment and imposes inequality on them violates the

1   principle of equal protection under the law. *Windsor*, 133 S.Ct. at 2694–96.

2   119.   The Marriage Discrimination Statutes do exactly that. For example, A.R.S.

3   Sections 25-101(C), -112(A), and -125(A), together with article 30, section 1 of the state

4   constitution, restrict access to marriage to opposite-sex couples, thereby denying

5   homosexuals the right to marry their chosen partner.

6   120.   These laws treat similarly situated persons differently by conferring the

7   benefits and protections of marriage on heterosexual but not homosexual couples. Stated

8   differently, these Arizona laws single out homosexuals for disfavored treatment.

9   121.   For these reasons, the Marriage Discrimination Statutes violate the Equal

10   Protection Clause of the Fourteenth Amendment to the U.S. Constitution.

11   122.   Defendants, under color of state law, have deprived and, absent relief from

12   this Court, will continue to deprive Plaintiffs of their fundamental right to marry and

13   thereby enjoy, in the words of the Supreme Court in *Windsor*, **"dignity and status of**

14   **immense import," all in violation of the Equal Protection Clause of the Fourteenth**

15   Amendment to the U.S. Constitution, which in turn violates 42 U.S.C. § 1983.

16   123.   The Marriage Discrimination Statutes classify the Plaintiffs based on sexual

17   orientation. In the Ninth Circuit, when considering Equal Protection claims, the district

18   court reviews classifications based on sexual orientation using heightened scrutiny, not

19   rational basis. *See SmithKline Beecham v. Abbott Labs*, 2014 WL 211807 at *6 (9th Cir.)

20   (Jan. 21, 2014) ("*Windsor* requires that heightened scrutiny be applied to equal protection

21   claims involving sexual orientation.").

22   124.   Plaintiffs accordingly pray for the relief described in paragraphs 139-145

23   below.

24                    <u>SECOND CLAIM</u>
25          Violation of Due Process Clause of the Fourteenth Amendment
26                         and 42 U.S.C. § 1983

     125.   Plaintiffs incorporate paragraphs 1-124 as though fully set forth.
27
     126.   The Due Process Clause of the Fourteenth Amendment of the U.S.
28

Constitution provides that no "State [shall] deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, § 1.

127.    "Marriage is one of the 'basic civil rights of man,' fundamental to our very existence and survival. To deny this fundamental freedom . . . is surely to deprive all the State's citizens of liberty without the due process of law." *Loving*, 388 U.S. at 12 (citation omitted).

128.    The Marriage Discrimination Statutes deprive Plaintiffs of the due process of law under the federal constitution because the State of Arizona deprives gay citizens the opportunity to marry the person of their choosing and, in other cases, fails to recognize as valid their out-of-state marriages.

129.    Because the Due Process Clause of the Fourteenth Amendment protects the 'fundamental freedom' to marry, along with the settled rights that attend valid out-of-state marriages, even the voters of Arizona may not infringe this constitutional right.

130.    The Marriage Discrimination Statutes classify the Plaintiffs based on sexual orientation. In the Ninth Circuit, when considering substantive Due Process claims, the district court reviews classifications based on sexual orientation using heightened scrutiny. *Witt v. Department of the Air Force*, 527 F.3d 806 (9th Cir.2008).

131.    Defendants, under color of state law, have deprived and, absent relief from this Court, will continue to deprive Plaintiffs of their fundamental right to marry and thereby enjoy, in the words of the Supreme Court in *Windsor*, "dignity and status of immense import," all in violation of the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution, which in turn violates 42 U.S.C. § 1983.

132.    Plaintiffs accordingly pray for the relief described in paragraphs 139-145 below.

<u>APPLICATION FOR PERMANENT INJUNCTION</u>

133.    Plaintiffs incorporate paragraphs 1-132 as though fully set forth.

134.    Although opposite-sex couples enjoy the benefits of marriage in Arizona, the Defendants' denial of Plaintiffs' right to marry, or have their out-of-state marriages

recognized as valid in Arizona, has resulted and will result in concrete, irreparable harm to Plaintiffs by denying them the rights, protections, benefits, and obligations associated with marriage, including by way of example only:

a. Community property rights and exemptions. A.R.S. §§ 33-431, 33-452, 33-453, 33-457, 33-1102, 33-1103, 33-1121.01, 33-1126, 33-1131, 33-1151.

b. Spousal pension benefits. A.R.S. §§ 23-775, 23-1046, 38-807, 38-846.

c. Continued coverage of disability insurance. A.R.S. § 20-1377.

d. Probate and intestate succession rights and responsibilities. A.R.S. §§ 14-2102, 14-2301, 14-2402, 14-2404, 14-3203, 14-3971 14-5301, 14-6212, 36-831; A.A.C. R4-12-602.

e. Rights and interests related to trusts. A.R.S. §§ 14-7418, 14-7422 14-10505, 14-10602.

f. Enforcement of the Family Medical Leave Act. A.A.C. R2-5A-D601.

g. Other spousal survivorship rights. A.R.S. §§ 12-259.03, 12-612, 12-613.

h. The right to bring claims and seek damages in civil lawsuits. A.R.S. §§ 12-612, 12-613, 20-259.03.

i. The privilege not to testify against one another. A.R.S. §§ 12-2231, 12-2232, 13-4062.

j. The ability to file a joint tax return. A.R.S. § 43-309.

k. Other tax exemptions and benefits. A.R.S. §§ 28-5802, 28-5811, 43-1111, 43-1022.

l. Crime victims' rights and protections. A.R.S. §§ 13-601, 13-701, 13-703, 13-713, 13-752, 13-3610, 13-3611, 13-4401, 13-4403; AZ A.D.C. R10-4-108.

m. Statutory privacy rights. A.R.S. §§ 12-761, 39-123, 39-124.

n. The ability to make medical decisions without first obtaining a healthcare power of attorney or durable power of attorney. A.R.S. § 36-3231.

135. Plaintiffs have suffered and will suffer permanent and personal harm absent an order from this Court permanently enjoining Defendants from enforcing the Marriage Discrimination Statutes restricting the right of same-sex couples to marry or be married in

Arizona.

136.    Plaintiffs accordingly seek an order permanently enjoining the enforcement of the Marriage Discrimination Statutes.

137.    **The Court's order permanently enjoining Defendants from enforcing state law banning same-sex marriage will prevent continued harm to Plaintiffs.**

138.    Plaintiffs request no relief compelling any person, church, or organization to solemnize same-sex marriages. Rather, Plaintiffs request relief against the Defendants to, for example, issue and, following the marriage ceremony or other solemnization, record the marriage licenses returned by Plaintiffs.

IV.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment on Claims One and Two as follows:

139.    Plaintiffs respectfully request a declaratory judgment and order for permanent injunctive relief under (a) Federal Rules of Civil Procedure 57 and 65, (b) 28 **U.S.C. § 2201(a), and (c) any "further necessary or proper relief" under 28 U.S.C. §** 2202.

140.    Plaintiffs request that the Court construe art. 30, §1 of the Arizona Constitution, and the other Marriage Discrimination Statutes, and enter a declaratory judgment that these and all other laws of the State of Arizona banning, refusing to recognize, or otherwise restricting same-sex marriage, violate the United States Constitution and 42 U.S.C. § 1983.

141.    Based on these declarations, Plaintiffs respectfully seek entry of a permanent injunction (a) enjoining the Defendants, acting in their official capacities, and all others under their supervision and control, and those acting in concert with them, under color of the law of the State of Arizona, from enforcing art. 30, § 1 of the Arizona Constitution and any Arizona statute that excludes gay men and women from access to marriage in the State of Arizona;  and, (b) compelling Defendants to accept the application of, issue marriage licenses to, and record the returned marriage licenses from the unmarried plaintiffs (e.g., Suzanne Cummins and Holly Mitchell, and Clark Rowley

and David Chaney).

142. **Plaintiffs request a "speedy hearing" under Rule 57, Fed.R.Civ.P. (Declaratory Judgment)** ("The court may order a speedy hearing of a declaratory-judgment action."). **Because Plaintiffs present important legal questions for resolution,** and no disputed material questions of fact, the Court would be justified in scheduling the case for early hearing on motion for summary judgment.

143. Plaintiffs request an award of the costs and expenses of this action, **including attorneys' fees. 42 U.S.C. § 1988(b) (if plaintiff "prevails" in section 1983 action, authorizing discretionary award of "a reasonable attorney's fee" to plaintiff);** *see Rhodes v. Stewart*, 488 U.S. 1, 4 (1988) (per curiam) (injunction or declaratory usually **satisfies test for award of prevailing party attorney's fees);** *Lefemine v. Wideman*, 133 S.Ct. 9, 11 (2012) (per curiam) (same); *Higher Taste, Inc. v. City of Tacoma*, 717 F.3d 712 (9th Cir. 2013).

144. Plaintiffs request entry of an award of nominal damages in an amount not to exceed $1. *See Carey v. Piphus*, 435 U.S. 247 (1978) (claim for violation of constitutional rights entitles plaintiff to award of nominal damages); *Draper v. Coombs*, 792 F.2d 915, 921 (9th Cir. 1986) (nominal damages recoverable for deprivation of constitutionally-based right); *Floyd v. Laws*, 929 F.2d 1390, 1402 (9th Cir. 1991) (upon proof of Section 1983 claim, award of nominal damages mandatory, even if plaintiff proved no actual damages).

145. Plaintiffs request any further relief that the Court determines may be just or equitable.

DATED: February 10, 2014.        By _s/ Shawn K. Aiken – 009002_
                                    Shawn K. Aiken
                                    Heather A. Macre
                                    William H. Knight
                                    Stephanie McCoy Loquvam
                                    2390 East Camelback Road
                                    Suite 400
                                    Phoenix, Arizona 85016

By  _s/ Ryan J. Stevens – 026378_

Ryan J. Stevens
GRIFFEN & STEVENS LAW FIRM, PLLC
609 North Humphreys Street
Flagstaff, Arizona 86001

By  _s/ Mikkel Steen Jordahl -- 012211_

Mikkel Steen Jordahl
MIKKEL (MIK) JORDAHL PC
114 North San Francisco, Suite 206
Flagstaff, Arizona 86001

By  _s/ Mark Dillon -- 014393_

Mark Dillon
DILLON LAW OFFICE
PO Box 97517
Phoenix, Arizona  85060

Attorneys for Plaintiffs

I hereby certify that on this 10th day of February, 2014 I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and a copy was electronically transmitted to the following:

Kathleen P. Sweeney
Todd M. Allison
Assistant Attorneys General
1275 West Washington
Phoenix, Arizona 85007-2997
kathleen.sweeney@azag.gov
todd.allison@azag.gov
Attorneys for Defendant Michael K. Jeanes, In His Official Capacity As Clerk Of The Superior Court Of Maricopa County, Arizona

  _s/ DeAnn M. Buchmeier_

S:\Connolly - Pochert\21401001\Pleadings\Complaint-1Am 140210.docx