1   SHAWN K. AIKEN
    2390 East Camelback Road, Suite 400
2   Phoenix, Arizona 85016
    Telephone: (602) 248-8203
3   docket@ashrlaw.com
    ska@ashrlaw.com
4   ham@ashrlaw.com
    Shawn K. Aiken - 009002
5   Heather A. Macre - 026625

6   DILLON LAW OFFICE
    PO Box 97517
7   Phoenix, Arizona 85060
    Telephone: (480) 390-7974
8   dillonlaw97517@gmail.com
    Mark Dillon - 014393

9
    MIKKEL (MIK) JORDAHL P.C.
10  114 North San Francisco, Suite 206
    Flagstaff, Arizona 86001
11  Telephone: (928) 214-0942
    mikkeljordahl@yahoo.com
12  Mikkel Steen Jordahl - 012211

13  GRIFFEN & STEVENS
    LAW FIRM, PLLC
14  609 North Humphreys St.
    Flagstaff, Arizona 86001
15  Telephone: (928) 226-0165
    stevens@flagstaff-lawyer.com
16  Ryan J. Stevens – 026378

17  *Attorneys for Plaintiffs*

18              UNITED STATES DISTRICT COURT

19                  DISTRICT OF ARIZONA

20  Joseph Connolly and Terrel L. Pochert; Suzanne      Case No. 2:14-cv-00024-JWS
    Cummins and Holly N. Mitchell; Clark Rowley
21  and David Chaney; R. Mason Hite, IV and
    Christopher L. Devine; Meagan and Natalie           MEMORANDUM OF POINTS
    Metz; Renee Kaminski and Robin Reece; Jeffrey       AND AUTHORITIES
22  Ferst and Peter Bramley,                            IN SUPPORT OF
                                                        PLAINTIFFS' MOTION FOR
23                              Plaintiffs,             AWARD OF ATTORNEYS'
    v.                                                  FEES AND RELATED NON-
24                                                      TAXABLE COSTS
    Chad Roche, In His Official Capacity As Clerk
25  Of The Superior Court Of Pinal County,
    Arizona; Michael K. Jeanes, In His Official
26  Capacity As Clerk Of The Superior Court Of
    Maricopa County, Arizona; and Deborah Young,
27  In Her Official Capacity As Clerk Of The
    Superior Court Of Coconino County, Arizona,
28
                                Defendants.

174630 2

1       **(1)    Plaintiffs are Eligible for the Court's Award of Their Reasonable**

2  **Attorneys' Fees and Related Non-Taxable Expenses.**

3       On October 17, 2014, the Clerk entered final judgment on the Court's order

4  granting Plaintiffs' motion for summary judgment and denying Defendants' cross-motion

5  for summary judgment. (Doc. 89). Defendants appealed. (Doc. 93). On December 1,

6  2014, and upon stipulation, the Court ordered extending the time for filing Plaintiffs'

7  motion for attorneys' fees and costs to thirty days after the judgment becomes final,

8  following the appeal in this case. (Doc. 96). Because the appeal in this case remains

9  pending in the Ninth Circuit, the Plaintiffs' motion for an award of their fees and costs is

10  timely.

11       **(2)    Plaintiffs are Entitled to an Award of Their Reasonable Fees and Non-**

12  **Taxable Expenses.**

13       Plaintiffs are entitled to an award of their costs, including their attorneys' fees,

14  because they succeeded under 42 U.S.C. § 1983, *see Amended Complaint for Permanent*

15  *Injunction and Declaratory Judgment* (Doc. 15), in overturning Arizona's ban on same-sex

16  marriage. In any action under 42 U.S.C § 1983, "the court, in its discretion, may allow

17  the prevailing party, other than the United States, a reasonable attorney's fee as part of

18  the costs." 42 U.S.C. § 1988.

19             [I]n order to qualify for attorneys' fees under §1988, a

20            plaintiff must be a "prevailing party." Under our "generous
                  formulation" of the term, " 'plaintiffs may be considered

21            'prevailing parties' for attorney's fees purposes if they
                  succeed on any significant issue in litigation which achieves

22            some of the benefit the parties sought in bringing suit.' "
                  *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939,

23            76 L.Ed.2d 40 (1983) (quoting *Nadeau v. Helgemoe*, 581 F.2d
                  275, 278–279 (CA1 1978)).

24  *Farrar v. Hobby*, 506 U.S. 103, 109 (1992). In the civil rights context, a plaintiff "prevails"

25  if he or she obtains some relief on the merits. *See Farrar*, 506 U.S. at 111 ("[T]o qualify as

26  a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of

27  his claim."). "Some relief" means:

28

2

> The plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought, *Hewitt, supra*, 482 U.S. at 760, 107 S.Ct. at 2675, or comparable relief through a consent decree or settlement, *Maher v. Gagne*, 448 U.S. 122, 129, 100 S.Ct. 2570, 2574 (1980). Whatever relief the plaintiff secures must directly benefit him at the time of the judgment or settlement.

*Id.* at 111–12. "[A] civil rights plaintiff seeks to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms." *Riverside v. Rivera*, 477 U.S. 561, 574 (1986) (plurality opinion). "Primary among such [non-monetary] considerations is 'the significance of the legal issues on which the plaintiff claims to have prevailed' and the 'public purpose' the plaintiff's litigation served." *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996) (quoting *Farrar*, 506 U.S. at 117 (O'Connor, J., concurring)), *reh'g denied and opinion amended on other grounds*, 108 F.3d 981 (9th Cir. 1997).

Here, Plaintiffs succeeded on their claims and thereby 'vindicated important civil and constitutional rights,' that is, overturning Arizona's ban on same-sex marriage and refusal to recognize out-of-state same-sex marriages. The Court declined to stay its order. Within hours, Defendants announced that they would not appeal because that "would be an exercise in futility."[1]

In short, Plaintiffs obtained every measure of relief sought in their amended complaint: compelling Arizona's recognition of marriages of same-sex couples performed elsewhere and overturning Arizona's ban on issuing marriage licenses to same-sex couples. Following the judgment in Plaintiffs' favor, on October 17, 2014, county clerks issued marriage licenses to same-sex couples for the first time in Arizona's history. Defendants made no effort to prevent the issuance of marriage licenses to same-sex

---

[1] *See* Attorney General's Press Release, Oct. 17, 2014 (Exh. A). Although Defendants *did* appeal, they did so only to preserve their defenses to paying Plaintiffs' attorneys' fees after the Supreme Court of the United States granted *certiorari* in the marriage equality cases from the Sixth Circuit. *See* Nov. 17, 2014 Correspondence from Solicitor General Robert Ellman (Exh. B).

*Connolly et. al. v. Roche et al.*
1716192

1   applicants during the pendency of the appeal.[2]

2       Parenthetically, Defendants may argue that Plaintiffs' case was mooted by the

3   Ninth Circuit's decision in *Latta v. Otter*, *supra*, and that Plaintiffs therefore are not

4   entitled to an award of fees and costs. But, the *Latta* decision was published ten months

5   *after* Plaintiffs filed suit. In fact, after the Ninth Circuit decided *Latta*, this Court sought

6   additional briefing on its applicability. (Docs. 86-87). Defendants opposed the strict

7   application of *Latta* because, they argued, the Ninth Circuit might perhaps reverse on

8   rehearing and, importantly, on Plaintiffs' standing to bring their non-recognition claims.

9   The Court nevertheless granted Plaintiffs' requested relief in full.

10       If *Latta* had in fact mooted this case, then the Defendants should have begun

11   issuing marriage licenses to same-sex couples after October 7, 2014 (the date of the *Latta*

12   opinion). Defendants did not do so. Instead, the Clerks issued marriage licenses only after

13   this Court ruled in Plaintiffs' favor ten days later. Defendants' press release confirms that

14   they would not have issued marriage licenses without this Court's order enjoining

15   enforcement of the statutory and constitutional provisions at issue. *See* Press Release, Ex.

16   A ("[Arizona's Attorney General is] issuing a letter today to the 15 county clerks of court

17   with the directive that *based on today's decision by the Federal District Court*, they can issue

18   licenses for same sex marriages immediately." (emphasis added)).[3]

19

20

---

21      [2] *See* Ellman Correspondence, Ex. B at 2 ("Arizona authorities will continue to issue marriage

22   licenses to otherwise eligible same sex applicants, and they will continue to recognize the validity of same sex marriages unless and until the Supreme Court determines that traditional marriage laws such as Arizona's are actually constitutional.").

23      [3] In addition, the Ninth Circuit has recognized the Supreme Court's disapproval of such

24   mootness arguments: "In [*Friends of the Earth, Inc. v.*] *Laidlaw*[, 528 U.S. 167 (2002)] the Supreme Court explicitly cautioned against finding cases moot at advanced stages of litigation

25   when it would be 'more wasteful than frugal' to do so." *Gator.com Corp. v. L.L. Bean, Inc.*, 398 F.3d 1125, 1140–41 (9th Cir. 2005). The Ninth Circuit had not even scheduled oral argument in

26   *Latta* when Plaintiffs filed their case, and the *Latta* court's mandate had not issued when the Court decided this case in Plaintiffs' favor. As Defendants themselves argued, "the *Latta*

27   decision 'is not fixed as settled Ninth Circuit law' until the mandate issues, and reliance upon it before that point is 'a gamble.'" (Doc. 87 at 2) (quoting *Carver v. Lehman*, 558 F.3d 869, 878 n.16

28   (9th Cir. 2009)). Simply put, the *Latta* decision did not moot Plaintiffs' case.

*Connolly et. al. v. Roche et al.*
374639.7

1    (3)    **Plaintiffs' Requested Award is Reasonable When Measured By the**

2    **Lodestar Method and Confirmed Under the _Kerr_ Guidelines.**

3    Plaintiffs are entitled to an award of only their reasonable costs and attorneys' fees.

4    Federal district courts (and the Supreme Court) have reduced requested fee awards for

5    hours that were excessive, redundant, or unjustified by the degree of success.

6    Reasonableness requires a two-part inquiry:

7    First, the court must determine the reasonableness of the
     hourly billing rate. . . .  Second, it must determine the

8    reasonableness of the hours expended on the case. . . .
     Informing this inquiry is the general proposition that '[t]he

9    prevailing party . . . is 'entitled to recover a reasonable
     attorney's fee for every item of service which, at the time

10   rendered, would have been undertaken by a reasonable and
     prudent lawyer to advance or protect his client's interest.

11

12   _U.S. ex rel. U.S. Prefab, Inc. v. Norquay Const., Inc._, CIV06-1598-PHX-RCB, 2008 WL

13   2026360 (D. Ariz. May 9, 2008). "The customary method of determining fees . . . is

14   known as the lodestar method. . . .The 'lodestar' is calculated by multiplying the number

15   of hours the prevailing party reasonably expended on the litigation by a reasonable hourly

16   rate." _McGrath v. County of Nevada_, 67 F.3d 248, 252 (9th Cir.1995). Fees established

17   under the lodestar analysis (as here) are presumptively reasonable. _See Pennsylvania v._

18   _Delaware Valley Citizens' Council for Clear Air_, 478 U.S. 546, 565 (1986).

19   In December 2013, Plaintiffs agreed that the law firm of Aiken Schenk et al. would

20   represent them. The complaint was filed in January 2014. By the end of February 2014,

21   other lawyers from Phoenix, Arizona had joined the Plaintiffs' legal team: Mark Dillon,

22   Susan Bovee, and Herb Ely. Two other lawyers—Ryan Stevens and Mikkel Jordahl in

23   Flagstaff, Arizona—represented two of the four couples that were added to the amended

24   complaint. In short, from March through July 2014, the combined legal team (9 lawyers)

25   represented fourteen plaintiffs in the motion practice that followed the amendment of the

26   complaint.

27   The three lawyers at the Aiken Schenk firm—Shawn Aiken, Heather Macre, and

28   Will Knight—undertook and managed the great bulk of the legal work on the amended

5

complaint and cross-motions for summary judgment. During the litigation, they faced 6 lawyers on the defense team: two lawyers in the Attorney General's office (Kathleen Sweeney and Todd Allison) together with special assistant attorneys general—four lawyers from the Alliance Defending Freedom in Scottsdale, Arizona, a self-described American conservative Christian nonprofit organization with the stated goal of "defending the right to hear and speak the Truth through strategy, training, funding, and litigation."

From December 2013 through October 2014, the Aiken Schenk firm performed 881.40 hours of legal work and $240,436 in hourly-based attorneys' fees on behalf of the Plaintiffs. In this application, however, and in the exercise of billing judgment, the Aiken Schenk firm seeks an award for only 582.7 hours of legal work and $179,017.50 in hourly-based attorneys' fees. The summary of the fees sought by the Plaintiffs as calculated under the lodestar method is as follows:

| Attorney | Fees |
|----------|------|
| Aiken Schenk | $179,017.50 |
| Mark Dillon | $26,520 |
| Ryan Stevens | $22,755 |
| Ellen Aiken | $11,000 |
| Mik Jordahl | $13,174.26 |
| TOTAL | $252,466.76 |

In support of the lodestar calculation, Plaintiffs' counsel attach the following exhibits in support of this memorandum and their application for an award of attorneys' fees and non-taxable expenses: (1) affidavits from moving counsel (**Exhibits 1-5**), (2) separate statement Shawn K. Aiken regarding consultation (**Exhibit 6**); (3) fee agreement (**Exhibit 7**); and, (4) task-based itemized statements of fees and expenses (**Exhibits 8-12**). After determining the "lodestar" amount, the Court considers upward or downward

6

1   adjustments to the result based on the guidelines first described in *Kerr v. Screen Guild*
2   *Extras, Inc.*, 526 F.2d 67, 70 (9th Cir.1975), *cert. denied*, 425 U.S. 951 (1976), and LRCiv
3   54.2(c), which we take up in turn below.

4       *(A)    The time and labor required of counsel.*

5       Because this was the first action of its kind filed in Arizona, the seven-member
6   legal team undertook extensive research into Arizona's history regarding to the regulation
7   of same-sex marriage. They followed (and researched) similar litigation around the
8   United States in both the state and federal courts.

9       After lawyers Shawn and Ellen Aiken researched the claims, they interviewed the
10   Plaintiff couples in late December 2013, compiled the Plaintiffs' personal stories, and
11   drafted and filed their complaint in early January 2014. Other members of the team
12   assisted in amending the complaint (e.g., omitting the right to travel, full faith and credit,
13   and class action claims) in February 2014; researched the law and the relief sought; and,
14   in March 2014, drafted the summary judgment motion, including the memorandum of
15   law and statement of facts that included the relevant sociological, historical, and empirical
16   data. All members of the team worked diligently in prosecuting the motion and cross-
17   motion practice.

18       In order to lessen the burden on both parties, plaintiffs' counsel contacted defense
19   counsel (Assistant Solicitor General Kathleen Sweeney) during the early weeks of the
20   case. During that call and later discussions, plaintiffs' counsel proposed that the parties
21   move to motion practice, on an agreed schedule, and forego any evidentiary trial.

22       The legal team presented over a thousand pages of exhibits and related materials in
23   support of its motion for summary judgment. In the meantime, Defendants cross-moved
24   for summary judgment. Counsel evaluated and responded to hundreds of similar pages of
25   exhibits included in defendants' briefing. As detailed in the attached task-based billing
26   records, this work required hundreds of hours of research and drafting.

27       Along the way, paralegals worked on tasks whenever possible to mitigate the
28   attorneys' fees. Counsel also obtained hundreds of hours of supplemental research

*Connolly et. al. v. Roche et al.*
374639 2

1   assistance from a team of seven volunteer law students from Arizona State University's
2   Sandra Day O'Connor College of Law who were compensated with pro-bono distinction
3   on graduation.[4]

4       (B)    *The novelty and difficulty of the questions presented.*

5       Although not complex, Plaintiffs' case was the first of its kind in Arizona. The case
6   involved a challenge to Arizona's Marriage Discrimination statutes and a corresponding
7   provision of the state constitution. Plaintiffs brought this action just six months after the
8   *Windsor* decision but before all but the earliest of the decisions in similar cases where
9   same-sex couples obtained relief (and eighteen months before the Supreme Court's ruling
10  in *Obergefell v. Hodges*, No. 14-556, 2015 WL 2473451 (U.S. June 26, 2015)).

11      Plaintiffs faced negative precedent on several issues, including Arizona's statutory
12  and constitutional scheme; the absence of a federal question under *Baker v. Nelson*; and,
13  Arizona's contrary state court decision on the subject (*Standhardt v. Superior Court ex rel.*
14  *Cnty. of Maricopa*, 206 Ariz. 276 (App. 2003)). Plaintiffs also challenged Arizona's refusal
15  to recognize valid out-of-state same sex marriages, which implicated standing principles
16  that, Plaintiffs argued, should be overlooked under the novel "covenant marriage"
17  argument.

18      (C)    *The skill required to perform the legal service properly.*

19      The legal team represents over 80 years of combined experience. The complaint
20  and briefing addressed novel legal issues. Effective and efficient management of the case
21  required the team to stay abreast of rapidly evolving law involving in nearly every
22  jurisdiction in the United States. This case required experience in family law if not
23  knowledge of same-sex marriage litigation. The supporting affidavits establish that the
24  members of the legal team (including those outside the Aiken Schenk firm) had the
25  experience necessary to litigate these issues, as well as the experience, reputation, and
26  ability to bring this action to a favorable disposition. *See* attached affidavits of Shawn K.

27  _____

28      [4] *See* (Doc. 34-1, Ex. 15, *Compendium of Arizona Laws*).

8

1   Aiken, Mark Dillon, Mikkel Jordahl, Ryan Stevens, and Ellen Aiken (Exs. 1–5).

2         *(D)*     *The preclusion of other employment by counsel because of the acceptance of the*
3   *action.*

4         This case required time from seven professionals, all of whom worked in private
5   law firms. None of the lawyers were precluded from working on other engagements
6   during the life of this action.

7         *(E)*     *The customary fee charged in matters of the type involved.*

8         The entire legal team has presents its task-based billings and corresponding hourly
9   rates. *See* Fee Schedule (attached as **Exhibit 7**). The rates charged by each attorney
10   corresponds to their level of experience and skill. As explained in the State Bar of
11   Arizona's most recent report of law practice economics, the median hourly fee for
12   attorneys in Arizona is $255 for those who have been in practice for 15 years. *See State Bar*
13   *of Arizona 2013 Economics of Law Practice* at 4–6 (2013) (attached as **Exhibit C**) ("2013
14   Market Report"). For lawyers in medium-size firms, with more experience, the market
15   billing rate may exceed $500 per hour. *See* 2013 Market Report, Ex. C at 20. Attorneys in
16   Arizona's metro areas charge higher rates, with Phoenix, Arizona having the highest
17   hourly rates. *See generally id.*   In addition, attorneys in more specialized fields (e.g.,
18   appellate law) may be paid up to $600 or more per hour. *Id.* at 21.

19         The rates charged by the legal team in this matter fall within these parameters.
20   For example, Shawn Aiken charges $500 per hour for trial, mediation, and arbitration
21   work. He has over thirty years of trial and other litigation experience. Aiken Aff., Ex. 8 at
22   ¶ 4. He works in a mid-sized Phoenix, Arizona firm. Aiken Aff., Ex. 8 at ¶ 3. In this
23   matter, Ryan Stevens charged $300 per hour—a reduction from his normal rate of $350
24   per hour. Stevens Aff., Ex. 11 at ¶ 4. Mr. Stevens operates his own firm in Flagstaff,
25   Arizona and has over six years of experience in constitutional and civil rights litigation.
26   He has first-chaired jury trials ranging from homicide to breach of contract, including
27   federal jury trial work in Arizona. *Id.*

28         Like Mr. Stevens, several members of the legal team reduced their billing rate.

1    Paralegals, law clerks, and other paraprofessionals were used where possible to reduce
2    fees and costs. The legal team also coordinated closely so as not to duplicate work and to
3    share the burden of the tasks performed.

4         *(F)    Whether the fee contracted between the attorney and the client is fixed or*
5    *contingent.*

6         Counsel agreed to represent Plaintiffs on the basis that Plaintiffs themselves would
7    owe nothing for counsels' legal services, but counsel would apply for an award of fees if
8    Plaintiffs prevailed. *See* Fee Agreement, Ex. 7 at p. 5. Several members of the legal team
9    reduced their hourly rates from the amounts listed in the original fee agreement. *Compare*
10   Fee Agreement, Ex. 7 (internal Ex. A, thereto) *with* Fee Schedule, Ex. 7 at p. 5. Although
11   the Aiken Schenk firm has not reduced its hourly rates, the firm seeks no award for fees
12   totaling $61,418.50 (298.7 hours). As a result, and because of some members of the legal
13   team reduced their hourly rate to one below the prevailing local market average, the
14   hourly rates reflected in Plaintiffs' requested award should be viewed as reasonable under
15   the circumstances.

16        *(G)    Any time limitations imposed by the client or the circumstances.*

17        Given the importance of the rights involved, and because many of the couples had
18   adopted children, the legal team pushed the case to a conclusion as quickly as possible,
19   including the aggressive briefing schedule proposed to and negotiated with Ms. Sweeney
20   at the Solicitor General's office.

21        *(H)    The amount of money or the value of the rights involved and the results obtained.*

22        Plaintiffs successfully sued for marriage equality for Arizona's families. The right
23   to marry, "central to personal dignity and autonomy," *Lawrence v. Texas*, 539 U.S. 558,
24   574 (2003) (internal quotations omitted), "has long been recognized as one of the vital
25   personal rights essential to the orderly pursuit of happiness by free men." *Loving v.*
26   *Virginia*, 388 U.S. 1, 12 (1967). Plaintiffs' suit (along with the later-filed action in *Majors v.*
27   *Horne* that was consolidated with this case) resulted in the Court's order allowing

28

*Connolly et. al. v. Roche et al.*
1716392

thousands in Arizona to marry the person they love.[5]

      *(I)    The experience, reputation, and ability of counsel.*

      The legal team brought over 80 years of experience to the task. Lead counsel here, Shawn K. Aiken, who has practiced law in Arizona since 1983, has served as lead counsel in hundreds of cases over the past thirty years, including the following representative matters:

- Lead counsel on hundreds of litigated cases, including a plaintiff's bad faith jury verdict of over $1 million and nearly 25 other trials to judgment;

- Prevailed in a 2015 constitutional challenge against the State of Arizona seeking to restore to Arizona cities and towns the authority to set the minimum wage within their jurisdictions;

- In a 2015 New Mexico arbitration, achieved a favorable award, including resolution of over $3 million in claims, in an investment partnership dissolution stemming from the adverse party's mismanagement of partnership assets;

- In 2015, obtained a multimillion-dollar award for a local real estate development client in a dispute with a longtime investment partner;

- In 2014, after seven years of litigation, successfully challenged the Arizona Sports and Tourism Authority tax that funded construction of the Arizona Cardinals' University of Phoenix Stadium, on behalf of plaintiffs seeking a refund of over $100 million;

- Successfully defended fiduciary duty and lost profits claims in which plaintiff sought over $40 million, resulting in a complete defense verdict;

- Successfully represented plaintiffs in a partnership dispute, overcoming hurdle created by the lack of a written partnership agreement in winning a $4.5 million arbitration award; and,

- Successfully defended to judgment numerous bankruptcy discharge actions totaling over $30 million and a breach of contract claim exceeding $30 million against a local government;

During their careers, Flagstaff co-counsel, Mik Jordahl and Ryan Stevens, have also litigated to conclusion several civil rights and constitutional cases.

---

[5] *See* Plaintiffs' Motion for Summary Judgment, Statement of Facts (Doc. 38) at 4, ¶ 11 (an estimated 16,000–21,000 same-sex couples reside in Arizona).

*Connolly et. al. v. Roche et al.*
174619 2

1    (J)    The "undesirability" of the case.

2    Plaintiffs brought the first case of its kind in Arizona. Before filing the complaint,

3    Shawn Aiken asked one national organization in this area to consider the case. The group

4    indicated that it had no desire to file the case in the foreseeable future. The case suggested

5    political consequences that many Arizona lawyers and law firms either declined to or

6    would not suffer.

7    (K)    The nature and length of the professional relationship between the attorney and

8    the client.

9    For over 20 years, the lead plaintiffs, Terry Pochert and Joe Connolly, attended a

10   small, Lutheran church congregation in Tempe, Arizona. Lead counsel, Shawn Aiken,

11   who has also attended the same church since 1983, knew Pochert and Connolly. In early

12   December 2013, they asked Aiken whether he knew of any lawyers who might represent

13   them in an action such as this one. One week later, Aiken told Connolly and Pochert that

14   he would do so.

15   (L)    Awards in similar actions.

16   *Geiger v. Kitzhaber*, 2014 WL 2054264 (D. Or. May 19, 2014) deals with a similar

17   subject matter and was prosecuted successfully over a comparable amount of time. In

18   *Geiger*, three members of the Plaintiffs' legal team were recently awarded their attorneys'

19   fees and costs totaling $133,657.50. *See Geiger*, United States District Court for the

20   District of Oregon Case No. Case No. 6:13-cv-01834-MC, DE #146.  The Court found

21   that the rates charged by the legal team, which ranged from $350 - $175 per hour, were

22   reasonable within the state of Oregon and for the complexity of the case. *Id.* The lawyers

23   in that case had less experience than the legal team here and the market rates for

24   attorneys in Oregon are lower than for those in Arizona as shown in the supporting

25   exhibits. *See Geiger*, DE #131, 131-1, 131-2 and 131-3. As the lawyers in *Geiger* pointed out,

26   the attorneys on another same-sex marriage case, *Latta, et al. v. Otter, et al.,* ___ F.3d ___,

27   Nos. 14-35420 and 12-17688, had spent over seven hundred hours prosecuting their case

28   before reaching the Ninth Circuit, which ultimately decided the issue. *See Geiger*, DE

12

1 | #131. This compares with the number of hours performed by the lawyers in this case
2 | (835.49 hours).

3 | Second, this Court recently awarded fees to the lawyers for the plaintiffs in *Diaz v.*
4 | *Brewer*, which concerned state benefits for same-sex couples. *Diaz v. Brewer*, 656 F.3d
5 | 1008 (9th Cir.2011). In that case, the attorneys for the Plaintiffs were awarded attorneys'
6 | fees in the amount of $305,049.95 and costs in the amount of $1,936.67. *See* 2015 WL
7 | 3555282 (June 5, 2015).

8 | Elsewhere, the State of Indiana paid more than $1.4 million in fees to plaintiffs'
9 | attorneys in five federal court cases that challenged Indiana's ban on same-sex marriages.
10 | The fees awarded in those five cases ranged from $45,000 to $650,000. See
11 | http://indystar.com/story/news/politics/2015/05/25/cost-indiana-fight-sex-
12 | marriage/27886953/.

13 | And, finally, in Oklahoma, in a case raising these same issues, the United States
14 | District Court for the Northern District of Oklahoma granted plaintiffs' motion for an
15 | award of solely appeal-related attorneys' fees in the amount of $298,742.77. *See Bishop v.*
16 | *Smith*, 4:04-cv-00848-TCK-TLW (Doc. 306)(5/1/15).

17 | *(M)   Any other matters deemed appropriate under the circumstances.*

18 | Plaintiffs' victory brought important benefits for the state of Arizona beyond the
19 | immediate result for same-sex couples. For example, the Williams Institute estimates that
20 | marriage equality will bring $61 million dollars to the State of Arizona. *See Estimating the*
21 | *Economic Boost of Marriage for Same-Sex Couples in Arizona*, E.G. Fitzgerald, Christy
22 | Mallory      and      M.V.      Lee      Badgett,      April      2014,
23 | http://williamsinstitute.law.ucla.edu/research/economic-impact-reports/az-econ-
24 | impact-june-2014/ (accessed October 30, 2014).

25 | / / /
26 | / / /
27 | / / /
28 | / / /

13

1                               CONCLUSION.

2          Plaintiffs prevailed. They are entitled to an award of attorneys' fees and expenses.

3   In determining what fee is reasonable, the most common and useful starting point is the

4   lodestar amount. Counsel seek an award of fees based on (a) the exercise of billing

5   judgment, (b) at hourly rates that are reasonable and within the community standard for

6   similar work, and (c) for compensable tasks.

7          Plaintiffs therefore respectfully request an award of attorneys' fees in the amount

8   of $252,466.76, together with taxable costs in the amount of $400 and non-taxable

9   expenses in the amount of $296.81, which results in their request in the total amount of

10  $253,163.57 or, in other words, compensation at an average hourly rate of $302.35 for all

11  professionals. The *Kerr* guidelines confirm that the fee award sought is reasonable.

12  Counsel also request any additional sums as hereafter may be incurred, including those

13  attorneys' fees and expenses incurred in support of this motion.

14

15  DATED: July 23, 2015.                    By   *s/ Shawn K. Aiken – 009002*
                                                  Shawn K. Aiken
16                                                Heather A. Macre
                                                  2390 East Camelback Road, Suite 400
17                                                Phoenix, Arizona 85016

18                                           By   *s/ Ryan J. Stevens – 026378*
                                                  Ryan J. Stevens
19                                                GRIFFEN & STEVENS LAW FIRM, PLLC
                                                  609 North Humphreys Street
20                                                Flagstaff, Arizona 86001

21                                           By   *s/ Mikkel Steen Jordahl -- 012211*
                                                  Mikkel Steen Jordahl
22                                                MIKKEL (MIK) JORDAHL PC
                                                  114 North San Francisco, Suite 206
23                                                Flagstaff, Arizona 86001

24                                           By   *s/ Mark Dillon -- 014393*
                                                  Mark Dillon
25                                                DILLON LAW OFFICE
                                                  PO Box 97517
26                                                Phoenix, Arizona  85060
                                                  *Attorneys for Plaintiffs*

27

28

                                            14

*Connolly et. al. v. Roche et al.*
174639 7

I hereby certify that on this 23rd day of July, 2015 I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and a copy was electronically transmitted to the following:

Mark Brnovich
Arizona Attorney General
John R. Lopez, IV
Solicitor General
Kathleen P. Sweeney
Assistant Attorney General
1275 West Washington
Phoenix, Arizona 85007-2997
john.lopez@azag.gov
kathleen.sweeney@azag.gov
Attorneys for Defendants

    s/ DeAnn M. Buchmeier

*Connolly et. al. v. Roche et al.*
371639 2